IAMS v CIVIL SERVICE COMMISSION

Docket No. 77430. Submitted January 16, 1985, at Lansing.—Decided March 26, 1985.

Petitioners, David Iams and others, are employees of the Department of Mental Health. On June 13, 1975, the benchmark factoring system of classification was adopted by the Civil Service Commission. Prior to benchmark conversion, petitioners were all classified as Nursing Service Supervisors 06 (NSS-06) and were paid $6.76 per hour, the maximum pay step within that classification. Upon benchmark conversion, petitioners were reclassified as Residential Care Aid Supervisors VB (RCAS-VB) and were paid $6.95 per hour, the first pay step of that new classification. Simultaneously, their anniversary date for purposes of advancing to the second step of the new classification was uniformly changed to the date of benchmark conversion, *i.e.,* September 16, 1979. These changes were in accord with the Civil Service Commission's Bureau of Classification policy memo #7. Two employees at the Muskegon facility, also classified as NSS-06 prior to the benchmark conversion, had less seniority than petitioners and were not at the maximum pay step within the NSS-06 classification at the time of benchmark conversion. Accordingly, under policy memo #7, they also moved into the new RCAS-VB classification first pay step upon conversion, but kept their anniversary dates for pay step increases as well as their service hours toward the pay increases. The effect of this application of policy memo #7 was that, as of January 1980, one of the less senior employees was earning $7.89 per hour while petitioners and another less senior employee earned $7.44 per hour. By March, 1980, both less senior employees were earning $7.89 per hour while petitioners continued to earn $7.44 per hour. Petitioners did not catch up with the less senior employees until September 16,

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 15A Am Jur 2d, Civil Service § 79 *et seq.*

Judicial review, under 5 USCS § 7703, of decisions of the Merit Systems Protection Board. 63 ALR Fed 503.

[3] 2 Am Jur 2d, Administrative Law § 553 *et seq.*

[4] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

1980. This cycle, known as "leapfrogging", in which all employees received equal pay for three to four months per year and the remaining eight to nine months those with seniority received less pay, continued for three years until September, 1982, when petitioners reached the top pay step in their pay range along with the junior employees. Prior to benchmark conversion, the Civil Service Commission also issued policy memo #6. The purpose of that memo was to allow each agency the opportunity to resolve problems which were anticipated under the conversion by the granting of a special salary adjustment in cases like this. Pursuant to the civil service employee grievance procedure, petitioners filed a statement of grievance on February 28, 1980, claiming that the "leapfrogging" was inequitable under policy memo #6 and seeking a reinstatement of their previous anniversary dates by a reallocation of the hours accumulated toward the next pay step prior to benchmark conversion. They also sought retroactive payment of the difference in pay this reallocation would create. A fourth-step grievance hearing was held before a hearing officer. The issue submitted was whether the Department of Mental Health abused its discretion by failing to grant petitioners a special salary consideration in accordance with policy memo #6. Petitioners contended that the Department of Mental Health abused its discretion in failing to appropriately apply policy memo #6 to correct or adjust the injustice worked on them because of benchmark conversion. On January 20, 1981, the hearing officer granted petitioners' grievance and ordered petitioners placed at the same pay step as the first less senior employee, effective each date he moved into a higher step and received a pay increase. The department appealed to the Employment Relations Board. A hearing was held and testimony taken. The Employment Relations Board reversed the decision of the hearing officer and denied the grievance, holding that the application of policy memo #6 is discretionary with the department. The petitioners sought review in the Ingham Circuit Court, which affirmed the decision of the Employment Relations Board, Michael G. Harrison, J. Petitioners appealed. *Held:*

1. Judicial review of administrative decisions is limited to determining whether the administrative agency was acting within its duly granted powers, whether there was competent, material and substantial evidence on the record supporting the agency's decision, and whether the record establishes that the agency has abused its discretion by arbitrary action. A court may not substitute its judgment for that of an administrative agency acting within its duly granted powers. The finding that

the department had the discretion to grant or deny special salary adjustments under policy memo #6 is supported on the record.

2. The finding that the department reasonably exercised its discretion in denying special salary adjustments to petitioners is supported on the record.

3. Petitioners' other claim was not properly preserved for appeal.

Affirmed.

1. CIVIL SERVICE — APPEAL — CONSTITUTIONAL LAW.

The proper scope of judicial review of a decision of the Michigan Civil Service Commission is the determination of whether the commission's decision is authorized by law and, in cases in which a hearing is required, whether supported by competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28).

2. CIVIL SERVICE — APPEAL.

A decision of the Michigan Civil Service Commission should be upheld if it is supported by such evidence as a reasonable mind would accept as adequate to support the decision; a preponderance of the evidence supporting the decision is not required.

3. ADMINISTRATIVE LAW — APPEAL.

Judicial review of administrative decisions is limited to determining whether the administrative agency was acting within its duly granted powers, whether there was competent, material and substantial evidence on the record supporting the agency's decision, and whether the record establishes that the agency has abused its discretion by arbitrary action; a court may not substitute its judgment for that of an administrative agency acting within its duly granted powers.

4. APPEAL — PRESERVING QUESTION.

A party may not raise an issue for the first time on appeal.

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *Maurice E. Schoenberger* and *Michael G. Lofuren*), for petitioner.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Arthur E. D'Hondt* and *Deborah Anne Devine*, Assistants Attorney General, for respondents.

Before: R. B. Burns, P.J., and Bronson and D. L. Hobson,* JJ.

Per Curiam. Petitioners appeal as of right from a circuit court order affirming the Civil Service Commission Employment Relations Board's denial of petitioners' grievance regarding pay increases.

A new system of classifying positions in the state civil service system known as the "benchmark factor ranking system" was adopted by the Michigan Civil Service Commission on June 13, 1975, pursuant to Const 1963, art 11, § 5. Benchmark conversion for petitioners, 17 employees at the Department of Mental Health's Muskegon Regional Center for Developmental Disabilities, took effect on September 16, 1979. Prior to benchmark conversion, petitioners were all classified as Nursing Service Supervisors 06 (NSS-06) and were paid $6.76 per hour, the maximum pay step within that classification. Upon benchmark conversion, petitioners were reclassified as Residential Care Aide Supervisors VB (RCAS-VB) and were paid $6.95 per hour, the first pay step of that new classification. Simultaneously, their anniversary date for purposes of advancing to the second step of the new classification was uniformly changed to the date of benchmark conversion, *i.e.,* September 16. These changes were in accord with the Civil Service Commission's Bureau of Classification policy memo #7, which provided in pertinent part:

"2. Employees who were at the maximum of their old pay range and who are at less than the maximum of the pay range after conversion will receive step increases using the effective date of the implementation as the anniversary date for step increases."

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

Policy memo #7 also provided in part:

"3. Employees who were at less than the maximum of their old pay range and who are at less than the maximum of the pay range after conversion retain their anniversary date for step increases."

Two employees at the Muskegon facility, also classified as NSS-06 prior to the benchmark conversion, had less seniority than petitioners and were not at the maximum pay step within the NSS-06 classification at the time of benchmark conversion. Accordingly, under paragraph 3 of policy memo #7, they also moved into the new RCAS-VB classification first pay step upon conversion, but kept their anniversary dates for pay step increases as well as their service hours toward the pay increase. The effect of this application of policy memo #7 was that, as of January, 1980, one of the less senior employees, Eugene Rake, was earning $7.89 per hour while petitioners and another less senior employee, William Johnson, earned $7.44 per hour. By March, 1980, both Rake and Johnson were earning $7.89 per hour while petitioners continued to earn $7.44 per hour. Petitioners did not catch up with the less senior employees until September 16, 1980. This cycle, known as "leapfrogging", in which all employees received equal pay for three to four months per year and the remaining eight to nine months those with seniority received less pay, continued for three years until September, 1982, when petitioners reach the top pay step in their pay range along with the junior employees.

Prior to benchmark conversion, the Civil Service Commission also issued policy memo #6. The purpose of that memo was to allow each agency the opportunity to resolve problems which were

anticipated under the conversion. The memo reads in pertinent part:

"The standards for pre-authorized special salary approval are as follows:

*    *    *

"4. There are special circumstances which would result in an injustice to the employee, if a special salary adjustment were not granted.

*    *    *

"6. In the case of conversion from the position comparison system to the benchmark factor ranking system, employees of greater seniority in a class may move to the same step of the pay range as employees with lesser seniority. Special steps are not allowed in these instances. A special step increase is allowed, if an employee with lesser seniority moves to a higher step than an employee with greater seniority. The increases shall be effective the same day, to maintain the same pay for the two employees."

Pursuant to the civil service employee grievance procedure, petitioners filed a statement of grievance on February 28, 1980, claiming that the "leapfrogging" was inequitable under paragraph 4 of policy memo #6 and seeking a reinstatement of their previous anniversary dates by a reallocation of the hours accumulated toward the next pay step prior to benchmark conversion. They also sought retroactive payment of the difference in pay this reallocation would create. A fourth-step grievance hearing was held before a hearing officer on November 5, 1980. The issue submitted was whether the Department of Mental Health abused its discretion by failing to grant petitioners a special salary consideration in accordance with policy memo #6. Petitioners contended that the Department of Mental Health abused its discretion in failing to appropriately apply policy memo #6 to

correct or adjust the injustice worked on them because of benchmark conversion.

On January 20, 1981, the hearing officer granted petitioners' grievance and ordered petitioners placed at the same pay step as Rake, effective each date Rake moved into a higher step and received a pay increase. In his opinion, the hearing officer stated:

"There is no doubt that the situation described in this case is patently unfair to the Grievants, despite the fact that what occurred with respect to the Grievants was in accord with Policy Memo No. 7. It is the opinion of the Hearing Officer that the Bureau of Classification, recognizing the existence of the inequities related to the operation of that policy, provided in Policy Memo No. 6 a method for the removal of such inequities.

"Item 6 of Policy Memo No. 6 speaks directly to the situation involved herein.

* * *

"The Hearing Officer believes that provision was intended to apply to situations like that present in this case and that the purpose of the language 'shall be effective the same day' is to authorize the increase for the employee with greater seniority on the same day that the employee with lesser seniority moves to a higher step because of the passing of the latter's anniversary date.

"The Hearing Officer notes that the appointing authority is not mandated to grant such special steps. The Hearing Officer, nevertheless, believes that the inequities in this case resulting from the Department's inaction are so grievous as to make that inaction an abuse of discretion. In addition to the foregoing the Hearing Officer notes that he has equitable authority, apart from whatever discretion the Department may have, to redress unfairness. In this case the exercise of that equitable authority is quite appropriate."

The department filed an application for leave to appeal with the Employment Relations Board on

February 19, 1981. On October 26, 1981, the Employment Relations Board sent the parties a notice for discussion of the application and requested the presence of a representative of the Bureau of Classification. In addition to discussing the issue raised below, these parties were requested to prepare to discuss three other subjects:

"1. Whether there have been other cases of employees at less than maximum salary in a pay range being benchmarked into a common class, level, salary range and step with employees at maximum; where the junior employees retain their old anniversary dates and the senior employees start a new anniversary date; and the juniors move to the second year step as much as a year ahead of the seniors.

"2. The application of Bureau of Classification Policy 6, Section 6, to leapfrogging after the date of benchmark.

"3. Whether a Department has absolute discretion to grant or withhold relief provided for in Policy 6, Section 6."

The proceeding before the Employment Relations Board was held on January 6, 1982. Roger Kent, on behalf of the Department of Mental Health, argued that petitioners received a pay raise effective September 16, 1979, and two weeks later, on October 1, 1979, they received another pay raise. He stated that granting an increase for the 17 petitioners would amount to a $30,000 to $40,000 expenditure, or the equivalent of the salary for three direct care workers. This was taken into consideration when the Department of Mental Health decided to deny the special pay increase petitioners had requested: management thought it was better to retain staff than to give others an additional pay raise. He argued that policy memo #6 had been applied equally and that no special

step increases had been given within the department. He further argued that policy memo #6 was discretionary and that the decision made by the Department of Mental Health to deny petitioners' requested pay increase was in the best interest of the agency.

Joseph Slivensky, representating the Bureau of Classification, reported on the events which led to benchmark conversion and the adoption of policy memos #6 and #7. He testified that implementation of the benchmark conversion process within the Department of Mental Health was more complicated than in other departments. Prior to conversion, the Legislature and the Governor both initiated task forces to look into allegations of patient abuse at one of the state's mental health facilities. One of the recommendations made was that direct care employees, such as petitioners, should receive a special pay increase folded into the benchmark process. These employees were moved into higher pay ranges upon benchmark conversion, resulting in pay raises of up to 20% for some employees, including employees formerly classified NSS-06. Slivensky reported that policy memo #6 was created to allow each agency the opportunity to resolve morale problems which were anticipated under the conversion by giving the agency the discretion to allow for special pay steps and to alleviate leapfrogging. He stated that other cases of junior employees moving ahead of senior employees existed within the state. He estimated that statewide, one-quarter of all employees, or approximately 10,000 workers, would potentially be entitled to a special step increase similar to that sought by petitioners. Slivensky also noted that a number of departments probably gave special pay steps such as that sought by petitioners at the time of conversion, although he had no exact

numbers. He estimated that the total was probably less than 1,000 employees.

Rick Schultheiss, employee union representative, stated that the department never argued before the hearing officer that the reason for denying the special accelerated step increase was because it was financially strapped; instead, the department had argued that application of policy memo #6 was not mandatory. He stated that this case is not typical of other state workers who would be eligible for accelerated step increases if petitioners' relief would be granted: while petitioners' salaries would increase substantially, due to the additional increase in their salaries after the task force reports, workers in other classifications would realize only a few cents differential. He argued that policy memo #6 was revised in 1979, and at the time the state knew of its financial situation, knew of the task force, and knew of the equity clause contained in the memo. He stated that the discretion in policy memo #6 is not unbridled, but admitted that financial conditions and possible layoffs may play a part in exercising that discretion.

On February 8, 1982, the Employment Relations Board issued a decision granting leave to appeal, reversing the decision of the hearing officer, and denying petitioners' grievance:

"In the Board's opinion, the net result of the Hearing Officer's action was to substitute his judgment for that of the Department. In effect, he applied Policy Memo No. 6 here as if it were mandatory. Presumably, he would require every department of the State of Michigan to advance every senior employee in every instance where the effect of Policy Memo No. 7 was to make the junior employee in the same benchmarked classification eligible for a step increase at a date earlier than the senior employee. However, Policy Memo No. 6, properly interpreted, calls for discretionary rather than manda-

tory application. A department, of course, must reasonably interpret and apply Policy Memo No. 6. In doing so, it must consider all relevant factors. Here, the Department of Mental Health appears to have done just that.

"The Board is satisfied that the Department acted well within the bounds of reasonable discretion in concluding that Policy Memo No. 6, paragraphs 4 and 6 do not require a special salary adjustment to Grievants."

This decision was made final on March 4, 1982.

On April 30, 1982, petitioners filed a petition for review of the Employment Relations Board decision in the Ingham County Circuit Court pursuant to GCR 1963, 706.3 and MCL 24.301 *et seq.;* MSA 3.560(201) *et seq.* On August 19, 1983, the parties submitted the case for decision on briefs. On March 14, 1984, the circuit court issued an opinion and order affirming the Employment Relations Board decision. It is this opinion and order from which petitioners now appeal.

Petitioners first argue that the trial court erred in finding that the Employment Relations Board's decision was supported by competent, material and substantial evidence upon the entire record. We disagree.

The scope of judicial review of administrative action is prescribed in Const 1963, art 6, § 28:

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the

whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law."

This standard applies to the review of final decisions of the Civil Service Commission. *Parnis v Civil Service Comm,* 79 Mich App 625, 629; 262 NW2d 883 (1977); *Viculin v Dep't of Civil Service,* 386 Mich 375, 395; 192 NW2d 449 (1971).

Under this standard, the Civil Service Commission's action must be upheld if it is supported by such evidence as a reasonable mind would accept as adequate to support the decision. *Parnis, supra,* pp 629-630; *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116; 223 NW2d 283 (1974); *Dillon v Lapeer State Home & Training School,* 364 Mich 1; 110 NW2d 588 (1961). A preponderance of the evidence supporting the decision is not required. *Parnis, supra,* p 630; *Soto v Director of the Michigan Dep't of Social Services,* 73 Mich App 263; 251 NW2d 292 (1977).

In light of this standard, we believe that the trial court's affirmance of the Employment Relations Board's decision was proper. An administrative decision is subject to reversal by the courts of this state only where the evidence firmly establishes that the agency has abused its discretion by arbitrary action. *Crider v State of Michigan,* 110 Mich App 702, 716; 313 NW2d 367 (1981). A court of this state cannot substitute its judgment for that of an administrative board or commission acting within its duly granted jurisdiction. *O'Connell v Dearborn Police & Fire Pension Bd,* 334 Mich 208; 54 NW2d 301 (1952).

The issue before the hearing officer and the Employment Relations Board in the present case was whether the department abused its discretion

by failing to grant petitioners an accelerated pay increase as provided for in policy memo #6. The board specifically requested that a representative of the Bureau of Classification appear before it to discuss this issue. Through his written and oral presentation, both part of the record, Joseph Slivensky explained the circumstances under which memo #6 was drafted.

Petitioners contend that policy memo #6, paragraph 6 is mandatory in application, citing *Smith v City Comm of Grand Rapids,* 281 Mich 235; 274 NW 776 (1937), and *Kment v City of Detroit,* 109 Mich App 48; 311 NW2d 306 (1981). They offered no evidence that it had been so treated by other departments. In fact, at the grievance hearing, petitioner Iams testified that adjustments in pay scale were "management's prerogative" and that memo #6 gives "the department the right to grant us a step increase". Respondents, on the other hand, contend that the application of policy memo #6, paragraph 6 is discretionary within each agency. The Employment Relations Board agreed and held that the Department of Mental Health had the discretion to grant or deny accelerated pay increases. This holding is supported by the record. As Slivensky testified,

"The third point as to whether the Department had absolute discretion, yes, they would have the absolute discretion to grant or withhold the relief provided in Policy Memo No. 6. Again, it would have to be within the criteria stated within the policy. One point of interest that should be brought out is at the point in time this policy was formulated the State was in a different financial picture than it is today. During the course of benchmarking from 1975 on there were years where the State was not in the financial bind that it is in today. Special steps could have been given a lot easier. It was not the intent again of the Bureau to

allow everybody to go on a step-by-step basis because of the significant cost of the project. It would have tripled the cost of the project."

Petitioners next contend that the Employment Relations Board's holding that the department reasonably exercised its discretion in denying them an accelerated pay increase is not supported on the record. We again disagree. The testimony of Bureau of Classification representative Joseph Slivensky indicated that financial considerations weighed heavily in the decision to deny petitioners' request. His testimony was clear that to grant petitioners' grievance would present a situation which would have a potentially devastating impact on the department's budget and, in turn, on the services that it is able to provide. In both the hearing before the hearing officer and before the Employment Relations Board, the Department of Mental Health articulated good business reasons for declining to grant petitioners an accelerated pay increase under policy memo 6. The primary reason was the impact on the fiscal management of the agency, coupled with the fact that petitioners had already received a substantial pay increase at the time of benchmarking. The decision had to be made between laying off at least three full-time staff workers or granting petitioners' request. The Department of Mental Health's decision refusing to grant petitioners' accelerated pay increase was founded on good business judgment and, therefore, was not arbitrary or capricious, as petitioners contend. A review of the record clearly shows that the findings of the Employment Relations Board were based upon competent, material and substantial evidence on the whole record.

Petitioners also argue that the Employment Relations Board improperly admitted new evidence

regarding the financial impact of the requested pay increases. This is, however, the first time petitioners have raised this issue, and therefore it may not be considered on appeal. *Smith v Gilles,* 28 Mich App 166; 184 NW2d 271 (1970); *State Farm Mutual Automobile Ins Co v Shelly,* 59 Mich App 491; 229 NW2d 820 (1975).

Affirmed.