MICHIGAN ASSOCIATION OF ADMINISTRATIVE LAW JUDGES v
PERSONNEL DIRECTOR OF THE STATE OF MICHIGAN

Docket Nos. 81466, 81469. Submitted October 3, 1986, at Detroit.
Decided December 1, 1986.

The Michigan Association of Administrative Law Judges, comprised of state employees serving as Administrative Law Judges, hearing examiners, referees, and other hearing officers, was included in the Business and Administrative unit of the Michigan Civil Service for purposes of collective bargaining by Richard Ross, personnel director for the state. The MAALJ contested its inclusion in the Business and Administrative unit, claiming that its members were entitled to their own, separate bargaining unit. An arbitrator ruled that MAALJ's request should be denied because its proposed bargaining unit was not the most appropriate unit under the Civil Service Commission's employee relations policy. MAALJ filed a petition for review in Wayne Circuit Court. The court, Michael L. Stacey, J., reversed the Civil Service Commission's decision to deny MAALJ's request for a separate bargaining unit, finding that the members of MAALJ had a conflict of interest with the other members of the Business and Administrative unit. Respondents, Richard Ross, as Personnel Director of the State of Michigan, and the Michigan Civil Service Commission, and intervening respondent, Office of the State Employer, filed separate appeals from the decision of the circuit court. The appeals have been consolidated.

The Court of Appeals held:

1. The decision by the Civil Service Commission to deny MAALJ's request for a separate bargaining unit was supported by competent, material and substantial evidence.

2. The possibility that members of MAALJ will be influenced by fear of economic retribution from members of their bargain-

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 1764-1775.

Rights of state and municipal public employees in grievance proceedings. 46 ALR4th 912.

Bargainable or negotiable issues in state public employment labor relations. 84 ALR3d 242.

ing unit who appear as witnesses before them is so speculative that it does not justify the creation of a separate bargaining unit for MAALJ members.

The order of the circuit court is reversed and the decision of the Civil Service Commission is reinstated.

CIVIL SERVICE — COLLECTIVE BARGAINING — ADMINISTRATIVE LAW JUDGES.

The possibility that decisions of administrative law judges and other hearing officers would be influenced by their fear of economic retribution from members of their civil service collective bargaining unit who appear as witnesses before them does not in and of itself justify the creation of a separate bargaining unit for the administrative law judges and other hearing officers.

*James F. Finn,* for petitioner.

*MacLean, Seaman, Laing & Guilford* (by *Kathleen R. Opperwall*), for Richard Ross, State Personnel Director for the State of Michigan, and the Michigan Civil Service Commission.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gary P. Gordon* and *Richard P. Gartner,* Assistant Attorneys General, for Intervening Respondent Appellant, Office of State Employer.

Before: BEASLEY, P.J., and J. H. GILLIS and M. E. DODGE,* JJ.

PER CURIAM. Respondents appeal as of right from the circuit court's order reversing the decision of respondent Michigan Civil Service Commission (MCSC) to deny petitioner's request for a separate bargaining unit. We reverse the circuit court's decision and reinstate the MCSC's decision.

Petitioner is comprised of state employees serving as Administrative Law Judges, hearing exam-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

iners, referees, and other hearing officers. Respondent Richard Ross, personnel director for the state, placed petitioner's members (hereinafter ALJs) in the Business and Administrative unit for bargaining purposes. This unit contains high-level professionals, such as accountants, auditors, appraisers, and librarians. Petitioner appealed its inclusion in this unit, claiming that its members were entitled to their own, separate bargaining unit. The case was then arbitrated and the arbitrator ruled that petitioner's request should be denied because petitioner's proposed bargaining unit was not the most appropriate unit under respondents' employee relations policy. Petitioner appealed again and the MCSC, agreeing with the arbitrator, denied petitioner's request for a separate bargaining unit. Petitioner then appealed to the circuit court, which reversed the MCSC's decision, finding that the ALJs had a conflict of interest with the other members of the Business and Administrative unit.

In reaching its decision, the circuit court relied on the testimony of Jay Sexton, an ALJ. He testified that although it was "far-fetched," he believed he would be subjected to some "harassment" through union grievance procedures if he did not give a fellow union member's testimony at a contested hearing fair consideration. Specifically, he testified that he might allow such witnesses to present irrelevant testimony for fear of economic retribution (i.e., he feared that other members of the Business and Administrative unit might oppose the ALJs' positions in bargaining with the state).

The circuit court noted that although the Code of Judicial Conduct (CJC) did not specifically apply to ALJs because they were not true judges, the policy behind the CJC applied to them because they were quasi-judicial officers. Therefore, the circuit

court concluded that Canon II of the CJC, which admonishes judges to avoid the appearance of impropriety, applied to the ALJs. The circuit court further noted that the Code of Professional Responsibility (CPR) did apply to the ALJs because they were all attorneys. In particular, Canon IX of the CPR admonishes attorneys to avoid the appearance of professional impropriety. As such, the circuit court held that a conflict of interest existed between the ALJs and other members of their unit because there was a possibility that those other members might retaliate against the ALJs for adverse decisions during the bargaining process.

When an administrative agency issues a decision, the court's only functions are to determine whether that decision is authorized by law and whether it is supported by competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28; *Iams v Civil Service Comm,* 142 Mich App 682, 692-695; 369 NW2d 883 (1985).

In this case, respondent Ross was responsible for determining appropriate units for bargaining purposes. An appropriate unit is defined as the "most appropriate unit, including all employees in *broad* groupings of related occupational classes." MCSC Employee Relations Policy § 2.2. (Emphasis supplied.) Moreover, an appropriate unit avoids fragmentation and thereby facilitates negotiation of state-wide issues. MCSC Employee Relations Policy § 6.2. Respondent Ross divided 60,000 state employees into twelve bargaining units. The smallest unit had 1,200 to 1,300 members. There are approximately sixty ALJs.

Respondent Ross' determination that the ALJs belonged in the Business and Administrative unit was appealed to an arbitrator pursuant to the MCSC Employee Relations Policy § 6.6. The arbitrator found that the Business and Administrative

unit was the most appropriate unit for the ALJs because it was a "broad occupational unit" and because a separate ALJ bargaining unit would result in fragmentation. The arbitrator noted that when fragmentation occurs the state is forced to negotiate with smaller groups on more issues and subissues and, therefore, the state must hire additional staff and spend more money on the negotiation process. The arbitrator also noted that the existence of a limited number of broader units resulted in less cumbersome negotiations for the state. The arbitrator also found that there was a community of interests between the ALJs and other members of the Business and Administrative unit.

Finally, the arbitrator addressed the ALJs' claim that their inclusion in the Business and Administrative unit would result in a conflict of interest under the CJC. The arbitrator found that ALJs were not judges to which the CJC specifically applied. Instead, he found that their positions were authorized by MCL 24.279; MSA 3.560(179), part of the Administrative Procedures Act, which provides:

> An agency, 1 or more members of the agency, a person designated by statute or 1 or more hearing officers designated and authorized by the agency to handle contested cases, shall be presiding officers in contested cases. Hearings shall be conducted in an impartial manner. On the filing in good faith by a party of a timely and sufficient affidavit of personal bias or disqualification of a presiding officer, the agency shall determine the matter as a part of the record in the case, and its determination shall be subject to judicial review at the conclusion of the proceeding. When a presiding officer is disqualified or it is impracticable for him to continue the hearing, another presiding officer may be assigned to continue with the case unless it is shown that substantial prejudice to the party will result therefrom.

The arbitrator further found that the ALJs' decisions were not final because they were appealable to an agency or were subject to judicial review. See MCL 600.631; MSA 27A.631 and MCR 7.104-7.105. The arbitrator also found that an ALJ who felt unable to render an impartial decision could disqualify himself. MCL 24.279; MSA 3.560(179). The arbitrator then ruled that it was "speculative at best that [an ALJ's] impartiality [would be affected] by . . . [a] perceived [threat of union] retaliation." He also ruled that the prospect of retaliation was tempered by the union's duty of fair representation. See *Goolsby v Detroit,* 419 Mich 651; 358 NW2d 856 (1984). Hence, the arbitrator concluded that the Business and Administrative unit, and not a separate unit, was the most appropriate bargaining unit for the ALJs.

The MCSC board agreed with the arbitrator's decision. In particular, the board found that the "policy against proliferation of bargaining units outweighs the disadvantages which might result by placing" the ALJs in the Business and Administrative unit.

We find that the MCSC's decision was supported by competent, material and substantial evidence. Const 1963, art 6, § 28. *Iams, supra.* We agree that the possibility that unit members might retaliate against the ALJs during the bargaining process is speculative. We believe the possibility of retaliation is minimized by (1) the union's duty of fair representation, (2) the appealability of the ALJs' decisions, and (3) the unit's self-interest in obtaining satisfactory wages and working conditions. Although we agree that the ALJs, as a minority within the Business and Administrative unit, may not always obtain the benefits they seek, we believe this result follows from their minority status in the Business and Administrative unit rather

than from retaliation for an ALJ's adverse decision. In this regard, we also note that some of the Business and Administrative unit members may never be called upon to testify before the ALJs. In fact, Mr. Sexton could only point to one other group within the unit which might testify before him. We believe these same safeguards should also protect ALJs from intra-union grievance procedures.

We further find that in cases of actual conflict an ALJ may disqualify himself or a party may move to disqualify him, and, if the ALJ does not disqualify himself, his decision is subject to judicial review. MCL 24.279; MSA 3.560(179). We note that intra-agency complaints to supervisors about an ALJ's conduct existed even before the formation of bargaining units. Such complaints allow a supervisor to evaluate and give guidance to the ALJs. Again, ALJs are not judges; instead, they perform a quasi-judicial function within an agency. *In re Schlossberg v State Bar Grievance Board,* 388 Mich 389; 200 NW2d 219 (1972). Because they are part of the agency for which they determine contested cases, an appearance of impropriety charge may always be made.

As noted by our Supreme Court, due process requires a hearing before an unbiased and impartial decisionmaker. *Crampton v Dep't of State,* 395 Mich 347, 351; 235 NW2d 352 (1975), reh den 396 Mich 956 (1976). Even without a showing of actual bias, a decisionmaker may be disqualified "where 'experience teaches that the probability of actual bias on the part of the . . . decisionmaker is too high to be constitutionally tolerable.' " *Id.,* (quoting *Withrow v Larkin,* 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712 [1975]). Some cases where actual bias may be presumed are those where the

decisionmaker: (1) has a pecuniary interest in the outcome; (2) has been the target of personal abuse or criticism by the party before him; (3) is enmeshed in other matters involving the petitioner; and (4) might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker. *Id.* We agree with the MCSC and conclude the possibility that the ALJS' decisions will be influenced by fear of economic retribution from members of their bargaining unit who appear as witnesses before them is so speculative that it does not justify the creation of a separate ALJ bargaining unit. Compare *In re Schlossberg, supra; Glass v State Highway Comm'r,* 370 Mich 482; 122 NW2d 651 (1963).

The other issues raised by petitioner are not properly before us because petitioner never cross-appealed the circuit court's adverse decisions on them. See *Peisner v The Detroit Free Press, Inc,* 421 Mich 125, 129, n 5; 364 NW2d 600 (1984), reh den 421 Mich 1202 (1985).

The circuit court's order is reversed and the MCSC's decision is reinstated.