CITIZENS DISPOSAL, INC v DEPARTMENT OF NATURAL
RESOURCES

Docket No. 98631. Submitted May 11, 1988, at Lansing. Decided
August 19, 1988. Leave to appeal applied for.

Citizens Disposal, Inc., filed an application with the Department
of Natural Resources seeking a permit to place 10,500 cubic
yards of solid waste in a 24.3-acre parcel of property adjacent to
an existing landfill. The DNR denied the permit on the basis
that the proposed landfill would have a detrimental effect on an
area of wetland approximately two acres in size contained
within the 24.3-acre proposed fill area and contiguous to a
larger wetland complex in excess of five acres. Following a
contested case hearing on the denial of the permit, the hearing
officer recommended that the denial of the permit be sustained
because Citizens' proposed use would violate both the Wetland
Protection Act and the Michigan Environmental Protection
Act. The Natural Resources Commission adopted the proposed
decision of the hearing officer and upheld the denial of the
permit. Citizens filed a motion for peremptory reversal in the
Ingham Circuit Court. The motion was denied and the decision
of the DNR affirmed, James T. Kallman, J. Citizens appealed.

The Court of Appeals *held:*

1. The circuit court erred in failing to conduct a de novo
review of the NRC's decision that filling the land in question
with solid waste would violate the MEPA. This error does not
require a reversal of the circuit court's holding, however,
because the permit denial was properly reviewed and affirmed
under the Wetland Protection Act.

2. The findings of the hearing officer that the 2.3-acre parcel
of land at issue is a wetland and that the parcel is part of a

REFERENCES

Am Jur 2d, Administrative Law §§ 376 *et seq.*
Am Jur 2d, Appeal and Error §§ 702 *et seq.*
Am Jur 2d, Pollution Control §§ 229, 230.
Am Jur 2d, Statutes §§ 142 *et seq.*
Supreme Court's view as to weight and effect to be given, on
subsequent judicial construction, to prior administrative construc-
tion of statute. 39 L Ed 2d 942.

wetland area in excess of five acres are supported by material, competent, and substantial evidence.

3. The fact that the wetland at issue may have been artificially created does not alter the fact that the area is a wetland within the meaning of the Wetland Protection Act and is entitled to the same protections as natural wetland areas.

4. The circuit court did not err in ruling that the DNR's decision to deny the permit request was supported by competent, material, and substantial evidence or in failing to recommend that a permit be issued allowing the wetland to be used as a landfill.

Affirmed.

1. ENVIRONMENT — WETLANDS — LANDFILLS.

A person is prohibited from placing fill material in a wetland except as provided under the Wetland Protection Act or by permit issued by the Department of Natural Resources (MCL 281.705[a]; MSA 18.595[55][a]).

2. ENVIRONMENT — WETLANDS — LANDFILLS — ENVIRONMENTAL PROTECTION ACT — WETLAND PROTECTION ACT — APPEAL.

The fact that a trial court erred in not reviewing de novo a decision of the Natural Resources Commission that filling certain land with solid waste would violate the Michigan Environmental Protection Act does not require remand of the case to the trial court where the NRC decision was properly reviewed and affirmed under the Wetland Protection Act (MCL 281.701 *et seq.*, 691.1201 *et seq.*; MSA 18.595[51] *et seq.*, 14.528[201] *et seq.*).

3. STATUTES — JUDICIAL CONSTRUCTION.

The rules of statutory construction, concisely stated, are: (1) when a statute is unambiguous, further construction is to be avoided; (2) if an ambiguity exists, the intent of the Legislature must be given effect; (3) a construction which best accomplishes the statute's purpose is favored; (4) statutes are to be interpreted as a whole and construed so as to give effect to each provision; (5) specific words in a statute are given their ordinary meaning unless a different interpretation is indicated; and (6) respectful consideration is to be given to the construction of a statute used by those charged with its application.

4. ENVIRONMENT — WETLANDS — ARTIFICIALLY CREATED WETLANDS.

The protective measures set forth in the Wetland Protection Act apply just as much to artificially created wetlands as to naturally existing wetlands.

5. ADMINISTRATIVE LAW — APPEAL — SUBSTANTIAL EVIDENCE.

Judicial review of an administrative decision is generally limited to determining whether the decision is authorized by law and supported by competent, material, and substantial evidence; evidence is substantial when a reasoning mind would accept it as sufficient to support the conclusion; while such evidence consists of more than a mere scintilla of evidence, it may be substantially less than a preponderance of the evidence (Const 1963, art 6, § 28; MCL 24.306[1][d]; MSA 3.560[206][1][d]).

*Richard J. Quist,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas J. Emery* and *Gary L. Hicks,* Assistant Attorneys General, for defendants.

*Williams, Schaefer, Ruby & Williams, P.C.* (by *Thomas G. Plunkett*), for Township of Mundy.

Before: SULLIVAN, P.J., and WAHLS and T. E. JACKSON,* JJ.

PER CURIAM. Plaintiff, Citizens Disposal, Inc., has been thwarted in every administrative and judicial forum in which it has appeared while attempting to obtain a construction permit allowing it, in essence, to enlarge a sanitary landfill in Genesee County. Most recently, the Ingham Circuit Court rejected plaintiff's request for relief. Essentially, plaintiff has consistently been denied permission to use a particular parcel of land as a landfill because it has not met the requirements of the Wetland Protection Act (wetlands act), MCL 281.701 *et seq.*; MSA 18.595(51) *et seq.* Except as provided under the wetlands act or by permit issued by defendant Department of Natural Resources, a person is prohibited from placing fill

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

material in a wetland. MCL 281.705(a); MSA 18.595(55)(a). Plaintiff now appeals as of right, and we affirm.

The record reveals that, in 1982, Grand Blanc Landfill, Inc., applied for a permit under the wetlands act to fill a fifty-acre parcel of land adjacent to its existing landfill in Genesee County. This parcel, which included an area of wetland approximately thirty-four acres in size, is located in intervenor-appellee Mundy Township, about four miles south of Flint in Genesee County. The permit application was denied by the Department of Natural Resources in May, 1983. That permit denial is not contested in this action. In 1984, plaintiff filed an application with the DNR seeking a permit to place 10,500 cubic yards of solid waste in a 24.3-acre parcel of land located within the original fifty-acre parcel and adjacent to that owned by Grand Blanc Landfill, Inc., but which did not include the acres of wetland which had caused the DNR to deny the permit request of Grand Blanc Landfill, Inc., the year before. It should be noted that the manager of plaintiff, Citizens Disposal, Inc., is the president of Grand Blanc Landfill, Inc., and that the directors and officers of plaintiff are family members of the owner of the latter company. Plaintiff's request for a permit was denied by the DNR on the basis of having failed to meet the requirements of the wetlands act and the Michigan Environmental Protection Act (MEPA), MCL 691.1201 *et seq.*; MSA 14.528 (201) *et seq.*[1] The application was denied due to the detrimental effect the landfill would create on an area of wetland approximately two acres in size contained within the 24.3-acre proposed fill area and contigu-

---

[1] However, the DNR approved plaintiff's request, made under the water resources commission act, MCL 323.1 *et seq.*; MSA 3.521 *et seq.*, to occupy the land.

ous to a larger wetland complex in excess of five acres.

Plaintiff requested a contested case hearing on the permit denial. A four-day hearing was conducted in October and November, 1985. The hearing officer, on April 1, 1986, issued a twenty-two page proposal for decision in which he recommended that the denial of plaintiff's permit request be sustained because plaintiff's proposed use would violate both the wetlands act and the MEPA. On May 16, 1986, the Natural Resources Commission (NRC) adopted the findings of fact and conclusions of law of the hearing officer by a four to two vote and, accordingly, denied plaintiff's request for a permit to place 10,500 cubic yards of solid waste in the proposed landfill area. Plaintiff's motion for peremptory reversal was denied by the Ingham Circuit Court on September 4, 1986, and, following oral argument by the parties, the circuit court issued an opinion and order on February 11, 1987, affirming the decision of defendant DNR. On appeal to this Court, plaintiff raises three issues.[2]

First, plaintiff argues that the circuit court erred by not reviewing de novo the decision of the NRC that filling the land in question with solid waste would violate the MEPA. We agree with plaintiff that the circuit court erred in failing to conduct a

---

[2] Defendant DNR and intervenor Township of Mundy raise additional issues in their appellate briefs. Since these parties have not filed cross-appeals, these issues are not properly before this Court. MCR 7.207; *Michigan Ass'n of Administrative Law Judges v Personnel Director of the State of Michigan,* 156 Mich App 388, 395; 402 NW2d 19 (1986); *Bhama v Bhama,* 169 Mich App 73; 425 NW2d 733 (1988). Moreover, the Township of Mundy, in its entire appellate brief, makes only one citation to case authority. It is not enough for a party in its brief simply to announce a position or assert an error and then leave it to this Court to discover and rationalize the basis for its claims. *Sargent v Browning-Ferris Industries,* 167 Mich App 29, 32-33; 421 NW2d 563 (1988). Finally, the issues raised by the DNR and the Township of Mundy are moot in view of this Court's affirmance of the circuit court's holding.

de novo review of this issue, but find that—because the permit denial was properly reviewed and affirmed under the wetlands act—that error does not require a reversal of the circuit court's holding.

It is true that the statute in the Revised Judicature Act which authorizes appeals to circuit court from any order, decision, or opinion of any state board, commission, or agency from which an appeal or other judicial review has not otherwise been provided by law has not been construed as requiring a de novo standard of review, but rather a standard limited in scope to whether a final decision, finding, ruling, or order is authorized by law and, in cases in which a hearing is required, whether the same is supported by competent, material, and substantial evidence on the whole record. MCL 600.631; MSA 27A.631. See also Const 1963, art 6, § 28; *Michigan Waste Systems v Dep't of Natural Resources,* 147 Mich App 729, 734-736; 383 NW2d 112 (1985), lv den 424 Mich 900 (1986). However, the Supreme Court has clarified that "the Michigan environmental protection act requires independent, *de novo* determinations by the courts." *West Michigan Environmental Action Council v Natural Resources Comm,* 405 Mich 741, 752; 275 NW2d 538 (1979), reh den 406 Mich 1121 (1979), cert den sub nom *Shell Oil Co v West Michigan Environmental Action Council, Inc,* 444 US 941; 100 S Ct 295; 62 L Ed 2d 307 (1979).

In his conclusions of law, the hearing officer in this case stated:

> I conclude that the proposed activity would cause pollution impairment or destruction of a natural resource which is prohibited by the Michigan Environmental Protection Act (1970 PA 127). When two statutes regulate the same subject matter, they must be read together. In this instance, the primary statute is the Wetlands Act[,] which

sets forth the standards for activity within regulated lands. A statute that deals specifically with the subject is to be given precedence over one of general applicability. Recognizing those principles, this Opinion has given the primary weight to the Wetlands Act[,] which deals specifically with the subject matter. The legislative determination that the proposed conduct under the standards of the Wetlands Act is unacceptable can only lead to the conclusion that the conduct is also unacceptable under the standards of the Michigan Environmental Protection Act.

In its February 11, 1987, opinion and order, however, the circuit court did not specifically mention the MEPA, focusing instead on the denial of plaintiff's permit request under the wetlands act. Regarding the applicable standard of review, the court stated:

Generally, judicial review of an administrative decision is limited to whether the decision is authorized by law and supported by competent, material and substantial evidence on the record. Const 1963, art 6, § 28; MCL 24.306(1)(d); MSA 3.560(206)(1)(d); *Iams v Civil Service Comm,* 142 Mich App 682, 692-693; 369 NW2d 883 (1985).

Although it is clear that the trial court erred by applying an improper standard of review to the denial of plaintiff's permit request under the MEPA, we perceive no need to remand the case because we conclude below that a judgment affirming the NRC's adoption of the hearing officer's findings regarding the wetlands act is required on the record presented. See *West Michigan Environmental Action Council, supra,* p 754.

Second, plaintiff argues on appeal that the area proposed for landfill use is not a "wetland" within the definition of that term as contained in the

wetlands act. In the act, wetland is defined as follows:

(g) "Wetland" means land characterized by the presence of water at a frequency and duration sufficient to support and that under normal circumstances does support wetland vegetation or aquatic life and is commonly referred to as a bog, swamp, or marsh and which is any of the following:

(i) Contiguous to the Great Lakes or Lake St. Clair, an inland lake or pond, or a river or stream.

(ii) Not contiguous to the Great Lakes, an inland lake or pond, or a river or stream; and more than 5 acres in size; except this subdivision shall not be of effect, except for the purpose of inventorying, in counties of less than 100,000 population until the department certifies to the commission of natural resources it has substantially completed its inventory of wetlands in that county.

(iii) Not contiguous to the Great Lakes, an inland lake or pond, or a river or stream; and 5 acres or less in size if the department determines that protection of the area is essential to the preservation of the natural resources of the state from pollution, impairment, or destruction and the department has so notified the owner; except this subdivision may be utilized regardless of wetland size in a county in which subdivision (ii) is of no effect; except for the purpose of inventorying, at the time. [MCL 281.702; MSA 18.595(52).]

In his proposal for decision in this case, the hearing officer stated:

The first issue presented at the hearing is whether or not there are wetlands within the proposed landfill site that come within the jurisdiction of the Wetlands Act. At the time of filing the application, it was clearly the belief of Citizens Disposal that potential wetland areas had been excluded in their plans. However, at the hearing,

the Petitioner's expert on wetlands testified that there were wetlands present within the area proposed for fill. Dr. Rusz' report (Petitioner's Exhibit No. 43) stated as follows:

"The proposed site (Figure 1) is located between the Grand Blanc Landfill and U.S. 23 and includes about 2.3 acres of wetlands. These wetlands are contiguous to a larger wetland complex of about 10 acres which are connected to the Bigelow drain, a tributary of Swartz Creek."

All witnesses who testified concerning wetlands agreed that something less than three acres of wetlands were present.

The evidence shows that the subject area is populated [sic] by vegetation that is wetland-dependent. The land is generally described as a wet meadow with a very small stream and a small ponded area. The wetland is perched, that is, it is over a foot higher in elevation than adjacent wetlands. This small wetland is physically connected to the larger wetland complex located on the property. The entire assemblage of wetlands is considerably in excess of five acres. I find, as a matter of fact, that the 2.3-acre portion of the land proposed for fill is a wetland and that it is part of a wetland in excess of five acres. Thus, the proposed fill is a wetland that is regulated by the Wetlands Act and that the placing of fill material in a wetland requires a permit.

Our review of the record convinces us that the findings of the hearing officer that the 2.3-acre parcel of land at issue is a wetland and that that parcel is part of a wetland area in excess of five acres are supported by material, competent, and substantial evidence. *Felton v Dep't of Social Services,* 161 Mich App 690, 694-695; 411 NW2d 829 (1987). The area in question was described as holding water sufficient to support wetland vegetation and aquatic life. It is contiguous to a pond and a stream and is situated near a larger wetland

area. The latter area, which is submerged throughout the year, supports a variety of aquatic plants and animals that rely on wetlands for their survival.

Plaintiff emphasizes on appeal, however, that the wetlands act was never intended to apply to a factual situation such as that presented in the case at bar in which the small parcel of land at issue was created within recent memory by artificial means. At the hearing before the hearing officer, plaintiff presented evidence suggesting that the land in question, although having the characteristics of a wetland, was actually created as a by-product of the construction of nearby U. S. Highway 23 in the early 1950's. In discerning the Legislature's intent regarding whether recently and artificially created wetlands are to be protected under the wetlands act, we are guided by the well-established rules of statutory construction concisely stated in *Nicholas v Michigan State Employees Retirement Bd,* 144 Mich App 70, 74; 372 NW2d 685 (1985), and reiterated in *Central Advertising Co v Dep't of Transportation,* 162 Mich App 701, 707; 413 NW2d 479 (1987):

> (1) when a statute is unambiguous, further construction is to be avoided; (2) if an ambiguity exists, the intent of the Legislature must be given effect; (3) a construction which best accomplishes the statute's purpose is favored; (4) statutes are to be interpreted as a whole and construed so as to give effect to each provision; (5) specific words in a statute are given their ordinary meaning unless a different interpretation is indicated; and (6) respectful consideration is to be given to the construction of a statute used by those charged with its application.

Moreover, unless the construction of a statute by

the body charged with administering it is clearly wrong or another construction is plainly required, this Court will accord deference to that construction. *Tulsa Oil Corp v Dep't of Treasury,* 159 Mich App 819, 824; 407 NW2d 85 (1987).

Our reading of the Legislature's definition of the term "wetland," in the context of the wetlands act, convinces us, as it did the hearing officer, that "[t]he fact that the wetland was probably artificially created by a redirection of the drainage patterns when U. S. 23 was constructed does not alter the current value of the wetland." Clearly, a prime purpose of the wetlands act is to ensure the preservation and protection of the wildlife habitats known as wetlands. To this end, the act, among other things, authorizes the DNR to contract with governments, agencies, or persons for the purpose of conducting studies for the efficient preservation, management, protection, and use of wetland resources, MCL 281.704; MSA 18.595(54); prohibits certain acts in wetlands by any person except as allowed by way of permit issued by the DNR, MCL 281.705; MSA 18.595(55); establishes a procedure in accordance with which permit requests are to be granted or denied, MCL 281.708; MSA 18.595(58); and provides for remedies and penalties applicable to those who violate the act, MCL 281.713, 281.714; MSA 18.595(63), 18.595(64). The language of the statute itself is replete with statements evidencing the strong legislative concern for protecting wetlands. For example, the statute provides that "[w]etland conservation is a matter of state concern," MCL 281.703(1)(a); MSA 18.595(53)(1)(a); that the "loss of a wetland may deprive the people of the state" of several enumerated benefits to be derived from a wetland, MCL

281.703(1)(b); MSA 18.591(53)(1)(b);[3] that a permit request to conduct a prohibited activity in a wetland shall not be approved unless the DNR first determines that the activity is in the public interest, such determination being made in light of "the national and state concern for the protection of natural resources from pollution, impairment, and destruction," MCL 281.709(2); MSA 18.595(59)(2); and that a permit shall not be issued unless the applicant shows either that the proposed activity is primarily dependent upon being located in the wetland or that a feasible and prudent alternative does not exist, MCL 281.709(4); MSA 18.595(59)(4).

In this case, it is undisputed that the 2.3-acre wetland will be destroyed by plaintiff's proposed use of the area as a sanitary landfill. It is thus also undisputed that the benefits which flow from a wetland, and which have been recognized by the Legislature in its findings of the advantages provided by wetlands, MCL 281.703(1)(b); MSA 18.595(53)(1)(b), would evaporate regardless of

----

[3] In MCL 281.703(1)(b); MSA 18.595(53)(1)(b) the Legislature made the following findings:

A loss of a wetland may deprive the people of the state of some or all of the following benefits to be derived from the wetland:

(i) Flood and storm control by the hydrologic absorption and storage capacity of the wetland.

(ii) Wildlife habitat by providing breeding, nesting, and feeding grounds and cover for many forms of wildlife, waterfowl, including migratory waterfowl, and rare, threatened, or endangered wildlife species.

(iii) Protection of subsurface water resources and provision of valuable watersheds and recharging ground water supplies.

(iv) Pollution treatment by serving as a biological and chemical oxidation basin.

(v) Erosion control by serving as a sedimentation area and filtering basin, absorbing silt and organic matter.

(vi) Sources of nutrients in water food cycles and nursery grounds and sanctuaries for fish.

whether the wetland in this case was fashioned by the hand of nature or of man. In view of the Legislature's unambiguous concern with protecting wetlands, we do not believe that a wetland deserves any less protective measures than those set forth in the wetlands act simply because it may have been artificially created.

Finally, plaintiff argues that the trial court erred in ruling that the DNR's decision to deny the permit request was supported by competent, material, and substantial evidence. Plaintiff feels that the hearing officer in this case overvalued the 2.3-acre parcel of land and—even assuming that that parcel constitutes a wetland within the meaning of that term as used in the wetlands act—erred by failing to recommend that a permit be issued allowing the wetland to be used as a landfill. We disagree.

As already noted, judicial review of an administrative decision is generally limited to determining whether the decision is authorized by law and supported by competent, material, and substantial evidence on the record. *Iams, supra.* Evidence is substantial when a reasoning mind would accept it as sufficient to support the arrived-at conclusion; while such evidence consists of more than a mere scintilla of evidence, it may be substantially less than a preponderance of the evidence. *Russo v Dep't of Licensing & Regulation,* 119 Mich App 624, 631; 326 NW2d 583 (1982). "Appellate courts in Michigan give considerable deference to the findings of administrative agencies, especially when it comes to fact finding and weighing of the evidence." *Felton, supra,* p 695.

In the present case, the hearing officer, after sifting through the evidence presented by the parties and applying that evidence to each of the criteria listed in MCL 281.709; MSA 18.595(59),

concluded that plaintiff's proposed landfill would cause an unacceptable disruption of aquatic resources.[4] In subparagraph (4) of that statutory provision it is stated that "[a] permit shall not be issued unless it is shown that an unacceptable disruption will not result to the aquatic resources."[5] Among the findings of fact made by the hearing officer and adopted by the NRC are that

[4] In his April 1, 1986, proposal for decision, the hearing officer suggested that an alternative landfill site might exist in a portion of the property which does not include the 2.3-acre wetland area of concern in this case.

[5] Subparagraph (4) of MCL 281.709; MSA 18.595(59) specifies that in determining whether a disruption to the aquatic resources is unacceptable, the criteria set forth in MCL 281.703; MSA 18.591(53), see n 3, *supra,* and in subparagraph (2) of MCL 281.709; MSA 18.595(59) must be considered. Subparagraph (2) provides:

In determining whether the activity is in the public interest, the benefit which reasonably may be expected to accrue from the proposal shall be balanced against the reasonably foreseeable detriments of the activity. The decision shall reflect the national and state concern for the protection of natural resources from pollution, impairment, and destruction. The following general criteria shall be considered:

(a) The relative extent of the public and private need for the proposed activity.

(b) The availability of feasible and prudent alternative locations and methods to accomplish the expected benefits from the activity.

(c) The extent and permanence of the beneficial or detrimental effects which the proposed activity may have on the public and private uses to which the area is suited, including the benefits the wetland provides.

(d) The probable impact of each proposal in relation to the cumulative effect created by other existing and anticipated activities in the watershed.

(e) The probable impact on recognized historic, cultural, scenic, ecological, or recreational values and on the public health or fish or wildlife.

(f) The size of the wetland being considered.

(g) The amount of remaining wetland in the general area.

(h) Proximity to any waterway.

(i) Economic value, both public and private, of the proposed land change to the general area.

The hearing officer devoted sixteen pages of his twenty-two page proposal for decision addressing these criteria.

most of the water in the 2.3-acre wetland flows into the wetland from an underground drain emanating from the eastern side of U. S. Highway 23, subsequently flowing into an adjacent wetland and, ultimately, into Swartz Creek; that the 2.3-acre parcel is the only wetland in the vicinity which has not been disturbed by adjacent landfill activity; that the small wetland area adds an element of diversity in wetland wildlife not found elsewhere in the vicinity; and that the proposed landfill use would wholly destroy the 2.3-acre wetland and thus further depreciate the value of the adjacent wetland complex. In his proposal for decision, the hearing officer, while recognizing that there is both a public and private need for disposing of solid waste in landfills and that a not unlikely economic result of the denial of plaintiff's permit request will be the increased cost of waste disposal for plaintiff's municipal and corporate customers, concluded that, nevertheless, the benefits which reasonably may be expected to accrue from the plaintiff's proposed landfill activity did not outbalance the foreseeable detriments of the activity upon the legislatively protected wetland in issue. In coming to this conclusion, the hearing officer noted, and apparently agreed with, the testimony of a wildlife biologist working for the DNR that the 2.3-acre parcel constituted an important part of the larger adjoining wetland system and that, since the entire wetlands complex was interconnected, both hydrologically and biologically, the filling of the small wetland area might tend to cause the complex to collapse.

We do not believe that judicial intervention in the administrative process would be proper in this case because we detect no indication that the administrative decision denying plaintiff's request to obtain a construction permit to enlarge a sani-

tary landfill is not authorized by law or is not supported by competent, material, and substantial evidence on the record. We are convinced that the evidence would be accepted by a reasoning mind as sufficient to support the arrived-at conclusion.

Accordingly, we affirm the circuit court's affirmance of the NRC's denial of plaintiff's request for a permit to place 10,500 cubic yards of solid waste in the proposed landfill area.

Affirmed.