SWEENEY v. HILLSDALE COUNTY BOARD OF ROAD
COMMISSIONERS.

1. Licenses—Definition—Assignment.

A license is a permission to do some act or series of acts on the land of the licensor without having any permanent interest in it and, since it is founded on personal confidence, it is not assignable.

2. Same—Form—Consideration—Revocation.

A license to do an act on the land of another may be given in writing or by parol, may be with or without consideration, but in either case is subject to revocation, though constituting a protection to the party acting under it until the revocation takes place.

3. Frauds, Statute of—Licenses.

Where nothing beyond a mere license is contemplated, and no interest in the land is proposed to be created, the statute of

frauds has no application and the observance of no formality is important.

4. LICENSES—CLEANING DITCHES—REVOCATION.

Landowner's permission to county road commissioners to enter upon his land to clean out a ditch would not constitute any protection to them against revocation of the license either by the licensor or subsequent purchasers of his land.

5. HIGHWAYS AND STREETS—TRESPASS—FLOODING.

The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty than has a private individual to trespass upon it by way of damming watercourses in the construction of highways so as to cause an owner's land to be drowned out.

6. SAME—OBSTRUCTION OF WATERCOURSES.

Although a landowner may not have a right of action for damages against road commissioners for so constructing a road as to obstruct drainage of his land, he is entitled to the exclusive use of his land in the usual and ordinary way and such right may not be interfered with by the commissioners.

7. EMINENT DOMAIN—INJUNCTION—RESTORATION.

Since the authority vested in a board of county road commissioners does not extend to appropriation of a private citizen's lands by so constructing a highway as to flood them in an unnatural or unusual amount, he is entitled to injunction protecting his premises either by a restoration of the same to the state in which they were prior to the construction or by procurement of a right of way for drainage across other premises.

Appeal from Hillsdale; Taylor (Mark D.), J. Submitted April 11, 1940. (Docket No. 98, Calendar No. 41,027.) Decided June 3, 1940.

Bill by Charles Sweeney against Ernest Bird and others, members of the Hillsdale County Board of Road Commissioners, for a mandatory injunction compelling defendants to remove stone debris and earth from a drain. Supplemental bill by plaintiff against defendants asking for money damages. Bills dismissed. Plaintiff appeals. Reversed and decree ordered entered.

*Grommon & Huggett,* for plaintiff.

*G. F. Lewis,* for defendants.

POTTER, J.   Plaintiff filed a bill for a mandatory injunction and to recover damages against defendants.   Later, plaintiff filed a supplemental bill alleging he had filed an original bill for a mandatory injunction against defendants to remove stone, earth and other debris used in filling up and stopping an outlet to a certain drain across plaintiff's lands and across a certain highway set forth in his bill of complaint so that he might have the free and uninterrupted use of the drain and the outlet thereof, asking that defendants be perpetually enjoined from interfering with the drain of plaintiff or the outlet of same except to clean the same, and for other relief; and alleging that, since the commencement of such action and contrary to the terms of a preliminary injunction served upon defendants, defendants had interfered with, molested and disturbed the drain of plaintiff and the outlet thereof and had thereby caused him to suffer great damages to the premises owned by him and described in the bill of complaint; that defendants, contrary to the commands of the preliminary injunction and in defiance thereof, continued, after the service of the same, to fill up, stop and obstruct the culvert referred to in plaintiff's bill of complaint, and the outlet thereof; and thereafter for two months defendants continued to alter the highway along the easterly line of plaintiff's premises by drawing large quantities of stone, gravel and soil thereon for the purpose of widening and raising the grade of the highway.

Plaintiff alleges that across his premises is certain low land and along the edge of the highway there were certain ditches which had served for many years

to drain the water from the highway and to carry the water from plaintiff's premises to the culvert across the highway; that defendants represented to him they would not disturb the depth of the culvert across the road, but would, as a matter of fact, replace the old culvert with a metal culvert of larger size and would place the bottom of the new culvert six inches below the bottom of the old culvert.

Plaintiff represents that defendants, instead of placing the new culvert in the location of the old one, placed it about 12 feet to the south of the old culvert and the bottom thereof, instead of being six inches below the bottom of the old culvert, is upwards of two feet above the bottom of the old culvert, and that thereby a dam is created holding back the water upon plaintiff's premises; that defendants continued to widen the highway and to raise the grade thereof by drawing large quantities of stone, gravel and soil thereon and that a large amount of soil and debris passed through the culvert and into the ditch draining the lands in question, filling them up and obstructing the flow of water therefrom, and that the effect of such obstruction has been to cause the water to back up and flood plaintiff's lands; that it is necessary the ditch and culvert be cleaned out and lowered to a depth not higher than the original culvert across the highway so that the water will properly flow from such ditches and from the lands of plaintiff; that, while the lands of plaintiff prior to the obstructions mentioned were tillable lands used for pasturage purposes, since the highway department has filled up the culvert and widened the road he has been unable to use such lands for agricultural purposes because they are overflowed with water.

Defendants deny they have violated the injunction. They allege the road was fully and completely built and constructed prior to the time of filing of the orig-

inal bill of complaint; admit they placed a metal tube in place of the old culvert; claim the new culvert 'discharges the water across the highway in substantially the same manner as did the old one; deny any debris was carried down the outlet of the ditch to any greater extent than was carried before the highway improvement; allege that if the ditch on the east side of the highway is lowered, defendants are ready and willing to lower the culvert on the premises in question, that substantially the same situation exists since the highway improvement as did before that time, that the premises of plaintiff were not drained any more before the improvement of the highway than they have been drained since, and that if plaintiff's premises are now flooded with water and damage done as claimed, the construction of the new highway did not in any manner increase such damage and that the drainage since the construction of the highway is the same as it was prior to the road improvement job.

The issue thus framed between the parties was brought on for hearing before the trial court. From a decree for defendants, plaintiff appeals.

Mud lake is located in section 21 of Adams township and is drained by the St. Joseph river, which runs in a northwesterly direction and constitutes a natural watercourse.

Plaintiff owns the south half of the southeast quarter of section 18 and the west half of the northeast quarter of section 19, approximately 160 acres of land. On the northeast quarter of the northeast quarter of section 19 are certain springs which drained into ditches along the highway running east and west between sections 18 and 19. Between the northeast quarter of the northeast quarter of section 19 and the southeast quarter of the southeast quarter of section 18 was placed a culvert across the highway which took up the water from springs on the north-

east quarter of the northeast quarter of section 19, carrying it through the culvert and upon and across the lands of plaintiff on the south half of the southeast quarter of section 18, and running from thence easterly across the land belonging to one Stevens and emptying into the St. Joseph river, perhaps a distance of 200 rods.

Mr. Stevens, who owns the land across which this drainage from plaintiff's premises runs, testified that the township of Adams some years ago cleaned out this ditch; that after the new culvert was put in, the condition of plaintiff's farm was such that there was about 18 inches of water over a part of it and the premises could not be used for pasturage purposes; that prior to that time, when the old culvert was in operation, the water did not stand upon plaintiff's premises but drained off; that at the time the culvert was improved, the old culvert was filled up; that he had measured the depth of the new culvert in comparison with the old one and that the old culvert was approximately two feet deeper in the ground than the new one taking its place. He testified that the ditch constituting the outlet had been filled up with mud and debris; that he was willing the board of county road commissioners clean out this ditch across his land but that they had never asked permission to clean it out.

It seems to be conceded that plaintiff may not recover damages against the highway commissioners by reason of the construction of the drain in question upon the general theory that the highway commissioners are agents of a municipality engaged in the performance of governmental functions and there is no statute rendering them liable in damages in such a case as this.

While Mr. Stevens is willing the highway authorities clean out the ditch in question across his lands,

yet there never was granted a right of way so to do. His testimony indicates the highway commissioner may have been granted a license to go upon the premises and clean out the ditch in question.

"A license is a permission to do some act or series of acts on the land of the licensor without having any permanent interest in it:    *    *    *    It is founded on personal confidence, and therefore not assignable. *    *    *    It may be given in writing or by parol; it may be with or without consideration; but in either case it is subject to revocation, though constituting a protection to the party acting under it until the revocation takes place. Where nothing beyond a mere license is contemplated, and no interest in the land is proposed to be created, the statute of frauds has no application, and the observance of no formality is important." *Morrill* v. *Mackman,* 24 Mich. 279, 282 (9 Am. Rep. 124).

So long as Mr. Stevens is willing the board of county road commissioners clean out the ditch across his land, this would afford the county road commissioners authority to enter upon the premises and clean out the ditch in question. It would not constitute any protection to them against a revocation of the license either by Stevens or subsequent purchasers.

*Ashley* v. *City of Port Huron,* 35 Mich. 296, 301 (24 Am. Rep. 552), was an action instituted to recover damages for injury caused to the house of plaintiff by the cutting of a sewer by the city authorities under legislation, the validity of which was not disputed. It was there said:

"The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual. If the corporation send people with picks and spades to cut a street through it without first acquiring the right of way, it is liable

for a tort; but it is no more liable under such circumstances than it is when it pours upon his land a flood of water by a public sewer so constructed that the flooding must be a necessary result. The one is no more unjustifiable, and no more an actionable wrong, than the other. Each is a trespass, and in each instance the city exceeds its lawful jurisdiction. A municipal charter never gives and never could give authority to appropriate the freehold of a citizen without compensation, whether it be done through an actual taking of it for streets or buildings, or by flooding it so as to interfere with the owner's possession. His property right is appropriated in the one case as much as in the other. *Pumpelly* v. *Green Bay Co.,* 13 Wall. (80 U. S.) 166; *Arimond* v. *Green Bay & Mississippi Canal Co.,* 31 Wis. 316; *Eaton* v. *Railroad Co.,* 51 N. H. 504 (12 Am. Rep. 147).''

While it may be true plaintiff may not have a right of action to recover damages against the defendants for flooding his lands in question, he is entitled to the protection of such lands and their use and occupation without being drowned out by the action of the county authorities. Plaintiff is entitled to the use of his premises in the usual and ordinary way and this right to the use of his premises is exclusive, and the highway commissioners have no right to interfere with such reasonable use. The authority vested in the board of county road commissioners never gave them any authority to appropriate the freehold of plaintiff, a private citizen, and, if they have done so, he is entitled to an injunction to protect his premises either by the restoration of the same to the state in which they were prior to the action of the highway authorities or by the highway authorities taking action to procure a right of way for drainage across the premises of Stevens, or otherwise.

Decree reversed, with costs, and a decree will be entered directing the restoration of the culvert to its

depth at the time of removal and directing the restoration of the outlet to the condition that existed before the highway improvement.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred.