WASH-O-MATIC LAUNDRY Co., INC., Plaintiff, *v.* 621 LEFFERTS AVENUE CORPORATION, Defendant.

Supreme Court, Special Term, Kings County, April 28, 1948.

*Nathan Immerman* for plaintiff.

*Hiram G. Shields* for defendant.

STEINBRINK, J.  The plaintiff in this action seeks a judgment restraining the defendant from interfering with plaintiff's use of space in the basement of an apartment building at 621 Lefferts Avenue, Brooklyn, New York, owned by the defendant, and for incidental damages.

Plaintiff is engaged in the business of installing, maintaining and servicing automatic coin-metered washing machines. On October 8, 1947, the managing agent of the building acting for the defendant's predecessors in title entered into an agreement with the plaintiff the pertinent provisions of which recite that " MANAGEMENT desiring to supply its tenants of the premises hereinafter described with modern, efficient laundry facilities which COMPANY is willing to supply as hereinafter specified * * * hereby leases to COMPANY all of that certain real estate situated in the City of New York, County of Kings, State of New York, consisting of that certain laundry space in the building owned by MANAGEMENT known as No. 621 Lefferts Avenue in the said basement as more fully indicated in red lines on the diagram as shown on the back hereof, and made a part thereof, for the purpose of installing, maintaining and servicing special washing and laundry equipment system therein for the term of five years commencing on the date hereof and ending on the 8th day of October 1952 ". The agreement further provided that plaintiff " make the investment necessary to equip the laundry room with washing machines * * * to service this equipment and to keep same in repair * * * to pay to MANAGEMENT $9 per month per machine installed, total of three machines."

It was conceded that the managing agent was authorized to sign the agreement by defendant's predecessors in title; that pursuant to such agreement plaintiff installed three automatic washing machines in the premises at 621 Lefferts Avenue, Brook-

lyn; that on January 7, 1948, title to said premises was conveyed to the defendant; that on January 26, 1948, defendant gave plaintiff written notice to remove the washing machines; that for a period of about one month after title passed plaintiff's machines were used by defendant's tenants and that on or about February 2, 1948, said machines were removed by defendant and others installed in their place.

The only disputed issue of fact as to which testimony was taken was whether the defendant knew of the existence of the agreement prior to or at the time of closing of title. The managing agent of the building who was signatory to the agreement testified that he was present at the closing of title and then and there apprised an officer of the defendant that such an agreement was in force. It was developed, however, that the witness for a period of time prior to the making of the agreement had had a financial connection with the plaintiff. This connection, of course, must be taken into account in evaluating his testimony. Contrariwise, defendant's officer testified that she had not been told about the agreement until after title was closed. She further testified she had been aware prior to the closing of title that there were washing machines on the premises and had voiced her intention to repace them with her own machines. The contract of purchase made no reference to the agreement in question or to the rights or claim, if any, of the plaintiff although it otherwise contained an extensive list of the tenancies to which the premises were subject. The agreement was not recorded although by its terms it purported to run for a period exceeding three years (Real Property Law, §§ 290, 291).

On all the evidence I hold that the defendant did not have actual or constructive notice of the existence of the agreement when it purchased the property. In the absence of such notice the defendant was not bound by the agreement (*Buffalo Academy of Sacred Heart* v. *Boehm Bros., Inc.*, 267 N. Y. 242, 250). In this connection, the mere fact that the washing machines were there when defendant bought the building did not constitute notice of the agreement or charge the defendant with the duty of inquiring as to the nature and extent thereof (cf. *Pratt* v. *Prentice*, 166 App. Div. 906).

In this view of the case the question whether the agreement was a lease or a license is not very material. However, there is another aspect to this case which calls for the conclusion I have drawn. A license in respect of real property has been defined as " a privilege to go on the premises for a certain purpose, as, for example, the purpose specified in the instru-

ment creating the license; it does not operate to confer on, or vest in, the licensee any title, interest, or estate in such property.'' (53 C. J. S., Licenses, § 84.) If it is in fact a license it may not be construed as a lease notwithstanding it is called a '' lease '' by the parties thereto (*Reynolds* v. *Van Beuren,* 155 N. Y. 120; *United Merchants' Realty & Improvement Co.* v. *New York Hippodrome,* 133 App. Div. 582, affd. 201 N. Y. 601). The agreement here did not confer upon plaintiff exclusive possession of any definite space as against the owner of the property; it merely granted a license to install and maintain certain laundry equipment in space designated on a diagram as '' washing machine room.'' This is not a sufficient delineation of any identifiable space so as to create a grant thereof. It may not be said that by virtue of this agreement the owner of the building could not require the plaintiff to move the machines to another part of the basement, if necessary.

It is inconceivable that plaintiff could claim the protection of the rent control law which would be the situation if this agreement were held to be a lease. All the more, since it has been held that an agreement for the installation and servicing of laundry facilities for the use of tenants of a building creates but a license and as such does not come within the purview of the rent control law (*Kaypar Corp.* v. *Fosterport Realty Corp.,* 69 N. Y. S. 2d 313, 316, 317–318, affd. 272 App. Div. 878). As was said by KOCH, J., in the course of his opinion:

'' The main object of the agreement is to procure for the tenants of defendant a laundering service. The plaintiff agrees to furnish the service. The plaintiff, through its installations, is granted a license or privilege to occupy the land for the purpose of performing its contract of furnishing this laundry service to the tenants. The plaintiff has no ownership of the space allotted to its equipment in the sense that usually obtains in the relationship of landlord and tenant. In a lease the tenant is the owner of the premises for the term therein specified. The rent is the purchase price for outright ownership for the duration of the term. In the instant matter, all that is granted by the terms of the contract, properly read, is a license to use the designated space for the installation and maintenance of the machines. If the occupation of the land is in connection with a service to be rendered to the landlord, then the possession continues to be that of the landlord. *Kerrains* v. *People,* 60 N. Y. 221, 225, 19 Am. Rep. 158. ° * °

'' Under the contract herein the plaintiff did not have exclusive possession in the sense necessary to constitute a tenancy

as opposed to a mere license or privilege. The allowance of space for the machines is but a part of the over-all license granted to plaintiff for the purpose of rendering service to the landlord and his tenants, and the space allotted is not ' commercial space ' in the purview of the law. So, too, any consideration paid is to be construed as compensation for the license to maintain the washing machines. It seems perfectly apparent that the intention of the Emergency Rent Control Law is to protect possession of space and not to protect a license to do certain acts on real property."

For other cases involving agreements for the installation and maintenance of washing machines in apartment buildings which have been construed as licenses merely, see *Sani-Matic Corp.* v. *Crown Realty Corp.* (N. Y. L. J., April 22, 1947, p. 1563, col. 3, Benvenga, J.) and *Halpern* v. *Silver* (187 Misc. 1023).

Since a license confers no interest or estate in land it does not create a burden on or run with the land (*Neponsit P. O. Assn.* v. *Emigrant Ind. Sav. Bank,* 278 N. Y. 248). It remains a purely personal contract (*General Meter Service Corp.* v. *Manufacturers Trust Co.* 182 Misc. 184, affd. 267 App. Div. 992), which is revoked, *ipso facto,* by a conveyance made by the licensor to a third party (53 C. J. S., Licenses, § 93; *Panama Realty Co.* v. *City of New York,* 158 App. Div. 726; *Smyth* v. *Brooklyn Union Elevated R. R. Co.,* 121 App. Div. 282; *Matter of Trustees of Village of White Plains,* 124 App. Div. 1; *Bunke* v. *New York Tel. Co.,* 110 App. Div. 241, 248; *Fieder* v. *Terstiege,* 56 N. Y. S. 2d 837, 842). " Anyone may be expected to protest vigorously against being compelled to perform promises he has never made and the successor to the title to land is no exception." (5 Restatement, Property, pp. 3156–3157.)

Judgment is directed for the defendant, with costs.

Settle judgment on notice.