UNITED COIN METER CO v GIBSON

Docket No. 52452. Submitted June 5, 1981, at Lansing.—Decided September 21, 1981. Leave to appeal applied for.

Craig Gibson purchased two apartment complexes from parties who had entered into agreements, termed "leases", with United Coin Meter Co., whereby United was to install, maintain and service coin-operated laundry equipment in the two complexes for a period of five years. The agreements also required any new owner to assume the obligations of the agreements. The land contracts under which Gibson purchased the complexes specifically stated that Gibson did not assume any responsibility for United's laundry equipment. Gibson removed United's laundry equipment, replaced it with his own and placed United's equipment in storage. United brought suit in Ingham Circuit Court, alleging that Gibson had breached the "lease" agreements. A bench trial was held and an order of no cause of action was entered in favor of defendant, James T. Kallman, J. The court found that the agreements were licenses rather than leases and that the conveyances to defendant revoked the licenses. Plaintiff appeals. *Held:*

The agreements are not specific enough to be leases. To be a valid lease, a contract must contain the names of the parties, an adequate description of the lease term and the amount of the rent. The agreements at issue allowed the owners of the complexes to choose the areas to be designated as laundry areas, contained indefinite descriptions of the laundry areas and failed to specify the number of machines to be placed in the laundry areas. The agreements were licenses and were revoked by the conveyances to defendant. Defendant did not succeed to any obligations of the previous owners. The trial court did not err when it found that the agreements were licenses.

Affirmed.

References for Points in Headnotes

[1] 25 Am Jur 2d, Easements and Licenses § 123.

[2] 49 Am Jur 2d, Landlord and Tenant § 1.

[3] 49 Am Jur 2d, Landlord and Tenant § 25.

[4] 17 Am Jur 2d, Contracts § 276.

[5] 25 Am Jur 2d, Easements and Licenses § 131.

1. LICENSES — DEFINITION.

   A license in real estate is a permission to do some act or series of acts on the land of the licensor without having any permanent interest in the land.

2. WORDS AND PHRASES — "LEASE".

   A lease in real estate gives the tenant possession of the property leased and exclusive use or occupation of it for all purposes not prohibited by the terms of the lease.

3. CONTRACTS — LEASES.

   A contract, in order to be a valid real estate lease, must contain the names of the parties, an adequate description of the leased premises, the length of the lease term and the amount of the rent.

4. CONTRACTS — CONSTRUCTION — AMBIGUITY.

   An ambiguous contract will be construed against the party that prepared it.

5. LICENSES — CONVEYANCE OF LAND — REVOCATION OF LICENSE.

   Conveyance of land by a licensor ipso facto operates as a revocation of any license previously granted permitting use of the land conveyed.

*Stephen M. Landau, P.C.,* for plaintiff.

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *Maurice E. Schoenberger),* for defendant.

Before: BEASLEY, P.J., and M. J. KELLY and N. A. BAGULEY,* JJ.

M. J. KELLY, J. This appeal presents the question of whether agreements between plaintiff, United Coin Meter Co., and defendant's predecessors in title were leases. Plaintiff appeals a trial court's finding that the agreements were licenses which did not bind defendant.

On June 25, 1976, United Coin entered into two separate agreements, which were termed leases,

* Circuit judge, sitting on the Court of Appeals by assignment.

with Halstead Management, the agent of defendant's predecessors in title. Under the agreements, which are identical, plaintiff was to install, maintain, and service coin-operated laundry equipment in two separate apartment complexes belonging to V. G. H. Investment Company and University Villa Association, defendant's predecessors in title. The agreements contained the following description of the premises:

"UNITED shall install, maintain, and service _____ automatic coin operated washers, _____ automatic coin operated dryers in laundry space provided by OWNER at the above premises located in an area measuring approximately 10 feet by 10 feet in the 'Laundry area(s)' in the aforementioned building(s) for a period commencing from the 1st day of JULY, 1976 and ending 30TH day of JUNE, 1981, or ending FIVE years from the date when the last unit in said complex is completed if it is still being built."

The agreements also contained a provision requiring any new owner to assume the obligations of the agreements.

In September, 1977, defendant, Craig Gibson, purchased the two apartment complexes by means of two separate land contracts. The terms of the land contracts provided:

"It is understood and agreed that the laundry equipment now on the premises has been leased from United Coin. Since purchaser does not wish an assignment of the existing lease or to be responsible thereunder, such equipment may be removed at United Coin's pleasure.

* * *

"Purchaser assumes no obligations heretofore incurred by seller other than as herein specifically provided, and seller agrees to hold purchaser harmless from any loss resulting from any action taken against

purchaser by any creditor of seller as the result of any obligation accruing prior to the date hereof."

Pursuant to the provisions of the land contracts, defendant removed plaintiff's laundry equipment, replacing it with his own. Plaintiff's equipment was placed in storage.

Plaintiff commenced this action, alleging that defendant had breached the "lease" agreements of June 25, 1976. After a bench trial, the court entered an order of no cause of action in favor of defendant. The trial court found that the June 25, 1976, agreements were licenses rather than leases because the actual area occupied by plaintiff's equipment so far exceeded the description in the agreements that the description was meaningless and inadequate for the purposes of a lease. Plaintiff appeals as of right, GCR 1963, 806.1.

Initially, plaintiff argues that *United Coin Meter Co v Lasala,* 98 Mich App 238; 296 NW2d 221 (1980), governs this case. However, the text of the opinion does not indicate that the lease in question was an agreement with the same provisions as those at issue in this case. Furthermore, *Lasala* did not deal with the question of whether the agreement at issue was a lease or a license. That issue was not raised and we therefore find *Lasala, supra,* inapplicable. Neither is it helpful.

The controlling issue is whether the contracts between plaintiff and Halstead Management are leases or licenses. A license is a permission to do some act or series of acts on the land of the licensor without having any permanent interest in the land. *McCastle v Scanlon,* 337 Mich 122, 133; 59 NW2d 114 (1953), *Morrill v Mackman,* 24 Mich 279, 282; 9 Am Rep 124 (1872). A lease, on the other hand, gives the tenant possession of the property leased and exclusive use or occupation of

it for all purposes not prohibited by the terms of the lease. *Nowlin Lumber Co v Wilson,* 119 Mich 406, 410; 78 NW 338 (1899), *Royal Oak Wholesale Co v Ford,* 1 Mich App 463, 466; 136 NW2d 765 (1965), *American Coin-Meter of Colorado Springs, Inc v Poole,* 31 Colo App 316, 318; 503 P2d 626 (1972). To be a valid lease, the contract must contain the names of the parties, an adequate description of the leased premises, the length of the lease term and the amount of the rent. *Brodsky v Allen Hayosh Industries, Inc,* 1 Mich App 591, 596; 137 NW2d 771 (1965), *lv den* 377 Mich 702 (1966).

While Michigan courts have not addressed the issue of whether an agreement to provide laundry facilities to an apartment complex is a lease or a license, a number of other jurisdictions have considered this question. In *Wash-O-Matic Laundry Co v Lefferts Ave Corp,* 191 Misc 884; 82 NYS2d 572 (1948), plaintiff contracted with defendant's predecessor in title to provide laundry machines to an apartment building. Attached to the contract was a diagram which designated part of the basement as the "washing machine room". When defendant bought the building, it replaced plaintiff's machines with its own. Plaintiff sued, claiming defendant breached the lease agreement. The court found that the agreement was a license because it did not confer upon plaintiff exclusive possession of any definite space as against the owner of the property. *Id.,* 575. The court found that the space designated "washing machine room" was not specific enough for a lease. *Id.,* 575. Accord: *Ulan v Vend-A-Coin, Inc,* 27 Ariz App 713, 715; 558 P2d 741 (1976), *Poole, supra,* 318-319, *Greenbro Coin Meter Corp v Basch,* 205 Misc 853; 132 NYS2d 876 (1954), *Reliable Washer Service v*

*Delmar Associates,* 49 Misc 2d 348; 267 NYS2d 419 (1966).

However, in *Polner v Arling Realty, Inc,* 88 NYS2d 348 (Sup Ct, 1949), plaintiff was granted exclusive use of the whole basement of the building of defendant's predecessor in title for a laundry room for the apartment. When defendant bought the building, it moved in its own machines and stored plaintiff's laundry equipment. Plaintiff sued, claiming breach of the lease agreement. In this case, the court found that the agreement was a lease because plaintiff was granted exclusive use of a specific area. *Id.,* 349-350. Accord: *Bodden v Carbonell,* 354 So 2d 927, 929 (Fla App, 1978), *Weiman v Butterman,* 124 Ill App 2d 246, 252; 260 NE2d 321 (1970).

The agreements between United Coin and Halstead Management were drafted by plaintiff. Where a contract is ambiguous, it will be construed against the party preparing it. *McCastle, supra,* 128-129, *Soloman v Western Hills Development Co,* 88 Mich App 254, 256-257; 276 NW2d 577 (1979). The agreements contained provisions quoted in the second paragraph of this opinion. The instruments also required that defendant's predecessors in title keep the laundry rooms clean and safely maintained.

These agreements, like the contract in *Wash-O-Matic, supra,* were not specific enough to be leases. Like the area in *Wash-O-Matic,* the agreements in this case allowed defendant's predecessors in title to choose the area designated as laundry areas. Furthermore, the description of the laundry area was too indefinite. In one of the apartment complexes covered by the agreements, the laundry area consisted of three different rooms on three separate floors. Paragraph 1 of the agreement did

not contemplate that the laundry area would be contained in three separate areas. The agreements were also vague because they failed to specify the number of machines which would be placed in the different laundry areas. Finally, the agreements did not give exclusive possession or control of the areas to plaintiffs since the defendant's predecessors in title were required to clean and maintain the laundry area. The agreements only gave plaintiff permission to use the laundry areas and were therefore licenses. Conveyance of the land by the licensor ipso facto operates as a revocation of a license previously granted. *Burkhart v Zimmerman,* 239 Mich 491, 493; 214 NW 406 (1927).

We find that plaintiff's cause of action does not lie against defendant. In the land contracts between defendant and his predecessors in title, there were two clauses which specifically stated that vendee Gibson did not assume any responsibility for plaintiff's laundry equipment. While Gibson knew the equipment belonged to plaintiff company because of the express disclaimer in each of the land contracts, he did not succeed to any obligations of his predecessors in title. Since we have found the agreements not to be valid leases he did not become obligated as a matter of law on said agreements. If plaintiff has a cause of action for breach of the agreements, it appears to be against defendant's predecessors in title and not defendant.

The trial court did not err when it found that the agreements were licenses and its decision is affirmed.

*Affirmed.*