MACKE LAUNDRY SERVICE COMPANY v OVERGAARD

Docket No. 94107. Submitted February 10, 1988, at Detroit. Decided May 18, 1988.

French Quarter Apartments, a partnership which owned several apartment buildings, entered into a five-year agreement in 1982 with United Coin Meter Company under which United, in exchange for the payment of a monthly fee, was allowed to conduct a coin-operated laundry machine business in the laundry rooms of French Quarter's apartment buildings. In January, 1984, French Quarter sold its apartments to Financial Heritage Property Management Company, of which John P. Overgaard was a general partner. In June, 1984, Financial Heritage gave United thirty days advance notice of its intent to cancel the agreement, but continued to allow United to conduct business and accepted payment of the monthly fee until August, 1984, when the laundry machines were removed from the apartments. Subsequently, Macke Laundry Service Company, which obtained United's interest in the agreement, brought an action in Oakland Circuit Court against Overgaard, alleging that the agreement was a lease and that defendant was in breach of the lease. Plaintiff sought injunctive relief which would allow it to regain possession and treble damages for forcible ejectment. Defendant moved for summary disposition, claiming that the agreement between French Quarter and United had merely granted a license to United and that the license had been revoked by virtue of the conveyance of the apartments by French Quarter to Financial Heritage. The trial court, Gene Schnelz, J., denied the motion. Defendant sought and was granted leave to appeal.

The Court of Appeals *held:*

1. Reference to the agreement as a "lease" in the June, 1984,

REFERENCES

Am Jur 2d, Easements and Licenses §§ 123 *et seq.*

Am Jur 2d, Evidence §§ 615, 1098, 1099.

Am Jur 2d, Landlord and Tenant §§ 18 *et seq.*

See the Index to Annotations under Landlord and Tenant; Licenses and Permits; Licenses in Real Property.

letter by Financial Heritage to United did not constitute a judicial admission that the agreement was a lease.

2. The agreement was not a lease since it did not give exclusive possession or control of the laundry rooms to plaintiff or to its predecessor in interest. More correctly, the agreement was a license which gave permission to plaintiff and its predecessor to use the laundry rooms. Since the agreement was a license, the conveyance of the apartments operated as a revocation of the license.

3. Although defendant, by accepting payment of the monthly fee and permitting the continued use of the laundry rooms after the conveyance of the buildings, may have created an implied license, such license was properly subject to revocation by defendant.

Reversed.

1. EVIDENCE — JUDICIAL ADMISSIONS.

Only a statement made by a party or his attorney during the course of a trial can be considered a judicial admission, and it must be a distinct, formal, solemn admission which is made for the express purpose of dispensing with formal proof of a particular fact at trial; an admission on a point of law is not binding on a court.

2. CONTRACTS — LEASES.

A lease in real estate gives the tenant possession of the property leased and exclusive use or occupation of it for all purposes not prohibited by the terms of the lease; for an agreement to be a valid lease, it must contain the names of the parties, an adequate description of the leased premises, the length of the lease term and the amount of the rent.

3. LICENSES — IMPLIED LICENSE.

A license in real estate is a permission to do some act or series of acts on the land of the licensor without having any permanent interest in the land; a license may be implied from the relations of the parties or from the conduct of the property owner, as when he assents to the doing of certain acts on his land.

*Mager, Monahan, Donaldson & Alber* (by *Lawrence M. Scott* and *Jeffrey A. Supowit*), for plaintiff.

*Goldstein, Serlin, Eserow & Steinway, P.C.* (by *Barry M. Rosenbaum*), for defendant.

Before: GILLIS, P.J., and GRIBBS and SAWYER, JJ.

PER CURIAM. In this contract action, defendant John P. Overgaard appeals by leave granted from a February 12, 1986, Oakland Circuit Court order denying his motion for summary disposition. We reverse.

French Quarter Apartments was a Michigan general partnership which owned some apartments. On May 17, 1982, French Quarter entered into a five-year agreement, which was termed a lease, with United Coin Meter Company (plaintiff Macke Laundry Service Company's predecessor in interest). Under the provisions of the agreement, French Quarter "leased" to United and United "hired" from French Quarter "all the laundry space" in French Quarter's apartment buildings for the purpose of United's "running an automatic coin-operated laundry business." The agreement provided that United would pay French Quarter monthly "rent" based upon either the total number of apartment units or the total number of occupied units, if the vacancy level of apartment units rose above five percent.

In January, 1984, French Quarter sold its interest in the apartments to Financial Heritage Property Management Company, of which defendant is a general partner. United then sent the "rent" payments to Financial Heritage, but, on June 21, 1984, Financial Heritage advised United that it was cancelling the agreement upon thirty days' notice. Financial Heritage continued to receive payments from United until August 1984, when Financial Heritage removed the laundry machines. At an unspecified point in time, plaintiff Macke became United's legal successor in interest.

Plaintiff subsequently filed the complaint on February 27, 1985, seeking damages for breach of

the lease, returned possession of the leased premises, injunctive relief and treble damages for forcible ejectment.

Defendant Overgaard moved for summary disposition under MCR 2.116(C)(10), claiming that the May 17, 1982, United-French Quarter agreement was a license, not a lease, granted by defendant's predecessor in title, giving plaintiff permission to use the laundry area in the apartment buildings. Defendant also argued that French Quarter's conveyance of the land to defendant was, ipso facto, a revocation of the license.

The trial court denied defendant's motion for summary disposition, ruling that defendant's reference to "lease" in the June 21, 1984, letter to United was an admission that the agreement was a lease. The trial court subsequently denied defendant's motion for rehearing or reconsideration of his motion for summary disposition. We then granted defendant's application for leave to appeal.

First, we find that defendant's reference, in the letter, to the agreement as a "lease" clearly does not operate as an admission. A statement is a judicial admission only if it is a statement made by a party or his attorney during the course of trial. The statement must be a distinct, formal, solemn admission made for the express purpose of dispensing with formal proof of a particular fact. Moreover, an admission on a point of law is not binding on a court. *Michigan Health Care, Inc v Flagg Industries, Inc,* 67 Mich App 125, 129-130; 240 NW2d 295 (1976).

Furthermore, we find that the agreement was not specific enough to be a lease. A lease gives the tenant possession of the property leased and exclusive use or occupation of it for all purposes not prohibited by the terms of the lease. *United Coin*

*Meter Co v Gibson,* 109 Mich App 652, 655-656;
311 NW2d 442 (1981), lv den 414 Mich 898 (1982).
A license, on the other hand, gives permission to
do an act or series of acts on the property without
any permanent interest in the land. *Gibson, supra*
at 655. For an agreement to be a valid lease, it
must contain the names of the parties, an ade-
quate description of the leased premises, the
length of the lease term and the amount of the
rent. *Brodsky v Allen Hayosh Industries, Inc,* 1
Mich App 591, 596; 137 NW2d 771 (1965), lv den
377 Mich 702 (1966).

The agreement in this case is vague in that it
does not specify the number of machines to be
placed in the laundry area. Moreover, although
the agreement purports to lease "all the laundry
space," it permitted defendant's predecessor to
choose the area designated as a laundry area.
Finally, the agreement did not give plaintiff exclu-
sive possession or control of the area, since it
required defendant's predecessor to clean and
safely maintain the premises. The agreement only
gave plaintiff permission to use the laundry area
and was therefore a license. See *Gibson, supra* at
657-658. Since the agreement was a license, con-
veyance of the apartments by French Quarter
operated as a revocation of the license previously
granted to United. *Burkhart v Zimmerman,* 239
Mich 491, 493; 214 NW 406 (1927); *Gibson, supra*
at 658.

Plaintiff argues that if the agreement is a li-
cense, then defendant ratified the agreement sub-
sequent to the conveyance by receiving payments
from plaintiff and by his failure to cancel the
agreement until six months later. Hence, plaintiff
contends, defendant was bound by the agreement,
which was irrevocable for a specified term. Plain-
tiff did not file a cross appeal and does not cite any
authority to support its argument that the agree-

ment was ratified. Accordingly, the issue is not properly before us. *Michigan Ass'n of Administrative Law Judges v Personnel Director of the State of Michigan,* 156 Mich App 388, 395; 402 NW2d 19 (1986); *Williams v City of Cadillac,* 148 Mich App 786, 792; 384 NW2d 792 (1985).

The question whether defendant created a new implied license by continuing the agreement after purchasing the property was not presented to the trial court, presumably because the trial court ruled that defendant was precluded from arguing that the agreement was a license. However, since the question is one of law, and all of the facts necessary for its resolution have been presented, this Court may review the claim. *Balogh v City of Flat Rock,* 152 Mich App 517, 520; 394 NW2d 1 (1985). A license may be implied from the relations of the parties or from the conduct of the property owner, as when he assents to the doing of certain acts on his land. See 15 Callaghan's Michigan Civil Jurisprudence, Licenses to Enter, § 4, p 559. We believe that, by accepting payments and permitting plaintiff to continue to use the laundry areas for six months before notifying plaintiff that he was cancelling the "lease," defendant probably established an implied license. However, that license was subject to revocation by the licensor defendant. *Stewart v The Cincinnati, W & M R Co,* 89 Mich 315, 320-321; 50 NW 852 (1891); *Sweeney v Hillsdale Co Bd of Road Comm'rs,* 293 Mich 624, 630; 292 NW 506 (1940).

We find that the lower court erred by denying defendant's motion for summary disposition. The agreement was a license which was revoked upon the conveyance of the apartments and, if a new implied license subsequently arose, defendant was entitled to revoke it.

Reversed.