# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD HOWARD, REED HOWARD, DON
K. REED, and GERALDINE REED,

UNPUBLISHED
July 7, 2016

Plaintiffs-Appellants,

v

No. 325812
Allegan Circuit Court
LC No. 13-052490-CH

GLENN HAVEN SHORES ASSOCIATION,

Defendant-Appellee.

Before: MURPHY, P.J., and WILDER and BORRELLO, JJ.

PER CURIAM.

Plaintiffs appeal by right a January 14, 2015, trial court order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(7) and (10). For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

## A. FACTS

This lawsuit involves a dispute over property located in the Glen Haven Shores Development (Shores Development) in Allegan County near Lake Michigan. The Shores Development is a platted community established in 1925 as the "Hollywood by the Lake" development. The plat in the lower court record showed that there are approximately 161 lots in the Shores Development.

Plaintiffs Richard Howard and Reed Debra Howard (Debra Howard), a married couple, own nine lots in the development. The Howards purchased the property in or about 1979. Plaintiffs Don Reed and Geraldine Reed are a married couple who have owned 10 lots in the Shores Development since approximately 1985. Defendant, Glen Haven Shores Association, is an association that manages affairs of the Shores Development and also owns roads and common areas in the Shores Development.

This lawsuit concerns "Outlot 9" an undeveloped beach lot that abuts Lake Michigan. A bluff separates Outlot 9 from other properties in the development including the Howard and Reed properties. The chain-of-title to Outlot 9 established that the lot was deeded to defendant in the original plat. In their complaint, plaintiffs did not dispute that, in the original plat, defendant owned Outlot 9. Both the Howards and Reeds own lots that border Outlot 9; these lots are separated by a bluff.

-1-

On October 13, 2013, plaintiffs commenced this lawsuit. In Counts I and II, plaintiffs alleged that they obtained title to the respective portions of Outlot 9 that bordered their properties through adverse possession. Specifically, plaintiffs argued that they had "owned, maintained, and used" the beach in an "open, notorious, exclusive, hostile, under a claim of right, in a continuous and uninterrupted manner for a period of 15 years." Counts III through VI concerned allegations related to alleged erosion to the bluff that separated plaintiffs' properties from the beach area. In Counts III and IV, plaintiffs alleged nuisance and in Counts V and VI, plaintiffs alleged negligence with respect to defendant's maintenance of the bluff and failure to abate the erosion.

During discovery Richard Howard agreed during his deposition that other property owners used the beach throughout the years, but Richard Howard stated that the Howard plaintiffs gave these people non-verbal permission to use the beach. Similarly, Debra Howard and Geraldine Reed agreed that other association members used the beach in front of the Howard and Reed's property. Geraldine Reed explained that she once asked a person to remove a tent from the beach and the Reeds once removed picnic tables from the beach. Kline Reed testified that he placed a "No Trespassing" sign near the bluff of the property, but also admitted that other association members used the beach.

Debra Howard testified that the Howards planted beach grass, did their own erosion control, cleaned up dead fish, put boats on the beach, held a wedding on the beach, had fires on the beach, and removed picnic tables from the beach. Debra Howard explained that storing boats and having fires was against association rules. She explained that the Howards placed "keep off" signs near where the beach grass was planted and she acknowledged that defendant regularly held a beach cleanup day.

Keegan Harris, a friend of the Howards, testified that he understood that the beach in front of the Howard's property was their private beach. Harris testified that the Howards always used the beach for social gatherings and kept a sailboat and Jetski on the beach. Harris admitted that he saw other association members using the beach when he visited the Howards and he never saw the Howards ask anyone to leave. Similarly, Jason Pettet, a neighbor and friend of the Howards offered the following testimony:

> *Q*. Do you recall in the years that you've been going to the beach since you were a child Association members other than your family or the Howards and the Reeds using the beach in front of the Howards and the Reeds?

> *A*. Yes. Members of the Association throughout the years have used an extensive amount of the beach. It's usually a little more of a hike down to where they're at so most of the time people don't hike that far down, but they've had a lot of people throughout the years do go that far down.

Paige Woolery, daughter of the Reeds, testified that her mother and grandfather placed "No Trespassing" signs at the bottom of the bluff when she was six or seven years' of age and she recalled the signs being there when she was in high school. Woolery recalled that there were signs along the bluff where the beach grass met the beach. Harris also testified that he recalled

seeing a "No Trespassing" sign near the bottom of the bluff. Harris thought the sign was there when he was "8, 9, 10 years old."

Following discovery, defendant moved for summary disposition pursuant to MCR 2.116(C)(7) and (10). With respect to the claims of adverse possession, defendant argued that these claims failed because several plaintiffs agreed during testimony that other property owners within the Shores Development openly used Outlot 9. Based on the deposition testimonies, defendant argued that plaintiffs could not establish that they exclusively used the beach for a period of 15 continuous years where numerous other association members also used the beach.[1] Because exclusivity is an element of an adverse possession claim, plaintiffs' claims failed as a matter of law.

In regard to the negligence and nuisance claims, defendant argued that because plaintiffs alleged that the erosion had continued "over the years," any claim involving the erosion was barred by the three-year statute of limitations for claims involving property damage; thus, summary disposition was proper under MCR 2.116(C)(7). Defendant argued that the alleged ongoing damage to the bluff did not extend the statute of limitations where our Supreme Court has held that the "continuing violation" doctrine does not apply to extend statutory limitations periods. Defendant cited testimony from several plaintiffs who agreed that the erosion had been ongoing for nearly 30 years.

Plaintiffs responded, arguing that the bluff and the beach were separate parcels for purposes of adverse possession. With respect to the bluff, plaintiffs argued that they planted extensive vegetation on the bluff and there was no testimony that other association members used the bluff. With regard to the beach, plaintiffs argued that they exercised a level control over the beach that could reasonably be expected given the nature of the property. In regard to the erosion, plaintiffs argued that their claim sought damages that were "directly linked" to defendant's wrongful conduct within three years of filing the lawsuit such that the statute of limitations did not bar their nuisance and negligence claims.

At a motion hearing, the trial court granted defendant's motion for summary disposition. With respect to adverse possession, the court reasoned that there was no genuine issue of fact to support that plaintiffs' exercised exclusive control over the beach. The court noted that there was nothing to indicate boundary lines, there was no indication that "permission had to be given or that permission was granted verbally," and evidence showed that other association members used the beach. With respect to the claims involving erosion, the court reasoned that the allegations in the complaint and testimony at depositions showed that plaintiffs' were aware of continual erosion on the bluff, yet they did not bring a lawsuit within three years' of noticing the damage. The court reasoned that the "continuing violation" doctrine did not apply and concluded that plaintiffs' nuisance and negligence claims were time-barred. The court entered a written order on January 14, 2015. This appeal ensued.

---

[1] Defendant also submitted letters from several association members who stated that they used Outlot 9; however, the trial court did not consider the letters when addressing defendant's motion for summary disposition.

## B. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition to determine whether the moving party is entitled to judgment as a matter of law." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). Summary disposition is proper under MCR 2.116(C)(10) when, after reviewing the evidence in a light most favorable to the nonmoving party, there is no genuine issue regarding any material fact. *Id.* Summary disposition is proper under MCR 2.116(C)(7) where a claim is barred by an applicable statute of limitations. Where no facts are in dispute, we review de novo whether a cause of action is barred by the statute of limitations. *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007).

## C. ANALYSIS

## I. ADVERSE POSSESSION

"To establish adverse possession, the party claiming it must show clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right." *Beach v Twp of Lima*, 489 Mich 99, 106; 802 NW2d 1 (2011) (quotation marks and citation omitted). To establish hostile use under a claim of right, the use must be "inconsistent with the right of the owner, without permission asked or given, and which use would entitle the owner to a cause of action against the intruder." *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006) (quotation marks and citation omitted).

In cases involving communal property,

> there is a presumption, in the context of a claim of adverse possession, that a tenant who occupies and possesses the premises recognizes and is honoring the rights of any cotenants to similarly possess and occupy the property unless there is evidence of acts or declarations that clearly establish the contrary and that unambiguously provide notice to the cotenants of an effort to displace or exclude them from the premises in violation of their property rights such that a cause of action arises. [*Wengel*, 270 Mich App at 97.]

In this case, there was no evidence of acts or declarations that clearly established that plaintiffs displaced or excluded other association members from Outlot 9, including both the beach and the bluff areas. *Id.* Here, Outlot 9 was part of the original plat and was intended to be owned and maintained by defendant as a common area for enjoyment by all of the association members. Unlike the other lots in the development, Outlot 9 was not divided into individual lots and it was deeded to defendant, which indicates that the area was not intended for individual ownership and was instead left open for common enjoyment by all of the property owners within the Shores Development. Furthermore, deposition testimony showed that, in addition to plaintiffs, many association members openly used the lot as a common beach area, defendant was involved with maintenance and cleanup of the area and on one occasion defendant instructed plaintiffs to remove a fixture from the beach. Apart from instructing plaintiffs to remove the fixture, defendant assented to plaintiffs' and other members' use of the beach. Essentially, the

-4-

evidence established that property owners within the Shores Development, including plaintiffs, enjoyed an implied license to use Outlot 9 as a common beach area. See *Macke Laundry Serv Co v Overgaard*, 173 Mich App 250, 255; 433 NW2d 813 (1988) (explaining that "[a] license may be implied from the relations of the parties or from the conduct of the property owner, as when he assents to the doing of certain acts on his land.") The beach access accrued to all association members as a benefit to owning property within the Shores Development. *Id.*

There was nothing in the record to clearly establish that plaintiffs excluded other association members from enjoying access to the beach or bluff. *Wengel*, 270 Mich App at 397. While plaintiffs posted some "No Trespassing" signs, these signs were not on the beach, and there is nothing in the record to show that they were directed at the cotenants as opposed to appearing as common warnings to all association members to refrain from climbing the bluff. In addition, the evidence did not establish that the signs were in place continually for 15 years or placed in a manner so that they bordered the entire bluff area. As noted, other members used Outlot 9 throughout the years and there is no evidence to show that plaintiffs' "unambiguously provide[ed] notice to the cotenants of an effort to displace or exclude them from the premises in violation of their property rights." *Wengel*, 270 Mich App at 97. Accordingly, there was no genuine issue of material fact to support that plaintiffs' use of Outlot 9 was hostile and under a claim of right; accordingly, their adverse possession claims failed as a matter of law. *Beach*, 489 Mich at 106; *Wengel*, 270 Mich App at 92-93. Summary disposition was therefore proper under MCR 2.116(C)(10).

Moreover, even assuming that plaintiffs could establish hostile use under a claim of right, which they cannot, the trial court correctly held that plaintiffs cannot establish that their use of Outlot 9 was exclusive. As noted above, exclusivity is an essential element of a claim of adverse possession. *Beach*, 489 Mich at 106. Here, several plaintiffs admitted during their depositions that other association members openly used the beach areas in front of their property throughout the years. Pettet, a friend of plaintiffs, perhaps best summarized the common use of the beach when he testified that "[m]embers of the Association throughout the years have used an extensive amount of the beach . . . they've had a lot of people throughout the years . . . go that far down [to use the beach]." Thus, there was no genuine issue of material fact regarding whether plaintiffs' exclusively used the beach areas in front of their property and their adverse possession claims failed as a matter of law. *Id.*

## II. NUISANCE/NEGLIGENCE

In their amended complaint, plaintiffs alleged that defendant was liable for erosion to the bluff that separated Outlot 9 from their properties under nuisance and negligence theories. Plaintiffs alleged that erosion to the bluff damaged their properties and they maintained that the erosion occurred "over the years."

There is a dearth of evidence in the record concerning the alleged erosion. During discovery, plaintiff Richard Howard testified that water ran off roads onto his property and he became most conscious of the runoff two years' prior during an abnormally heavy rainy season. Plaintiff Debra Howard testified that her property had erosion problems dating back to the time the Howards first bought the property in 1979. Similarly, plaintiff Geraldine Reed testified that erosion had been occurring on her property. She explained that defendant built a berm a "few

-5-

years ago," but the berm only controlled runoff onto defendant's property, not the Reed's property. Geraldine Reed testified that "this goes back 15 years maybe. And of course, things have been eroding ever since." She also explained that erosion had "absolutely" been occurring since 1985 when the Reeds purchased the property. The Reeds lost a number of feet every year. In addition, plaintiff Kline Reed testified that erosion had been occurring since the Reeds purchased the property in 1985, but he did not know why the erosion was occurring. Kline Reed explained that erosion caused 25 to 30-feet of property loss near the portion of the Reed's property near the top of the bluff. Plaintiffs' expert Ryan Ysseldyke stated that he would not be surprised if plaintiffs' had observed erosion over the past 29 years.

In the lower court, defendant argued that plaintiffs' negligence and nuisance claims were time-barred by the three-year statute of limitations set forth in MCL 600.5805(10). MCL 600.5805 governs the applicable statute of limitations for alleged injuries to persons or property and provides in relevant part:

> (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

> * * *

> (10) Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property.

The period of limitations under MCL 600.5805(10) begins to run at the time "the claim accrues." Relevant to this case, the claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827.

In the lower court, defendant argued that because several plaintiffs admitted during their depositions that they noticed erosion occurred when they first purchased the property in the late 1970's and early 1980's, their claims accrued more than three years ago and were therefore time-barred in their entirety. Defendant argued that plaintiffs were attempting to save their claims under the now abrogated "continuing violations" doctrine and cited *Terlecki v Stewart*, 278 Mich App 644; 754 NW2d 899 (2008) in support of this argument. Given that the trial court appears to have relied on the reasoning in *Terlecki*, a closer review of that case is warranted.

In *Terlecki*, in 1997 the defendant replaced a wooden spillway that connected Silver Lake to the Indian River. *Id*. at 647. The plaintiffs alleged that the new concrete spillway was about seven inches higher than the old one and alleged that the increased height caused their low-lying wooded property to flood. *Id*. The plaintiffs also alleged that the defendant improperly capped a culvert in 2001 and that they first noticed flooding and death of their trees in 2001. *Id*. at 647, 652. The plaintiffs commenced suit in 2005, arguing that they did not realize the source of the problem until a survey was conducted that year. *Id*.

On appeal, the plaintiffs argued that the three-year limitations period in MCL 600.5805(10) did not bar their claims in part because of the continuous-tort doctrine. *Id*. at 650.

This Court rejected the plaintiffs' argument, holding that the claim accrued at the time the alleged wrong occurred—i.e. in 1997 or 2001 when the new spillway was constructed or the culvert was capped—more than three years' prior to the lawsuit. *Id*. at 652. This Court rejected the plaintiffs' argument concerning the continuous-tort doctrine, explaining as follows:

> Our Supreme Court has recently opined that the "'continuing violations' doctrine is contrary to the language of [MCL 500.5805]." [*Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 290; 696 NW2d 646 (2005).] Therefore, the Court held that "the doctrine has no continued place in the jurisprudence of this state." *Id.* The *Garg* case was a discrimination lawsuit in which the Court held that for the plaintiff's claim to survive the plain text of the three-year limitations period of MCL 500.5805(10) and that of the accrual statute, MCL 500.5827, the plaintiff was required to file her claim within three years of an adverse employment act. The holding of *Garg* does not appear limited to discrimination cases; rather, the Court applied the plain text of the limitations and accrual statutes at issue here. [*Terlecki*, 278 Mich App at 654-655 (citations omitted).]

Closer review of *Garg* illustrates how claimants previously employed the "continuing violations" doctrine and indicates that the doctrine is dissimilar to the claims plaintiffs raised in this case.

In *Garg*, the plaintiff filed a race-based discrimination grievance in 1987. *Garg*, 472 Mich at 277. Thereafter, the plaintiff was continually denied workplace promotions through 1997. *Id*. at 267-269. In 1995, the plaintiff brought an employment discrimination suit alleging *inter alia* that she was discriminated against based on her national origin. *Id*. at 270. The defendant argued in part that the plaintiff's claims were time-barred by the three-year statute of limitations. *Id*. at 271. This Court disagreed, holding that the "continuing violations" doctrine "allowed the introduction of factual allegations going back more than three years before plaintiff filed her lawsuit and thus the statute of limitations was not a bar to the facts plaintiff presented to the jury." *Id*.

Our Supreme Court reversed this Court, holding that the "continuing violations" doctrine did not comport with the plain statutory language governing claim accrual, explaining:

> MCL 600.5827 provides that a 'claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.' Thus, [MCL 600.5805] requires a plaintiff to commence an action within three years of each adverse employment act by a defendant. Section 5805 does not say that a claim outside this three-year period can be revived if it is somehow "sufficiently related" to injuries occurring within the limitations period. Rather, the statute simply states that a plaintiff "shall not" bring a claim for injuries outside the limitations period. Nothing in these provisions permits a plaintiff to recover for injuries outside the limitations period when they are susceptible to being characterized as "continuing violations." To allow recovery for such claims is simply to extend the limitations period beyond that which was expressly established by the Legislature. [*Garg*, 472 Mich at 282.]

In this case, the trial court appears to have agreed with defendant that plaintiffs' nuisance and negligence claims were governed by the reasoning in *Terlecki* and *Garg*. The trial court likened plaintiffs' claims to a "continuing violation" claim because there was evidence that erosion occurred more than three years before plaintiffs filed their complaint.

The trial court erred in part in holding that plaintiffs' nuisance and negligence claims were time-barred in their entirety. The continuing-violations doctrine formerly allowed claimants to use conduct that occurred outside of the limitations period to prove damages that occurred at some point in the future within the limitations period. See *Garg*, 472 Mich at 282. Indeed, in both *Terlecki* and *Garg*, the plaintiffs sought to use evidence of conduct that occurred three years' prior to when they filed their complaint to prove damages that occurred sometime thereafter. Unlike *Terlecki* and *Garg*, here, all of the alleged wrongful acts or omissions that gave rise to plaintiffs' claims did not necessarily occur more than three years prior to filing the complaint. Plaintiffs essentially alleged that defendant maintained the berm in a negligent manner. In turn, defendant's negligence gave rise to a nuisance—i.e. erosion. To the extent that defendant negligently maintained the berm before October 28, 2010—i.e. three years before plaintiffs filed their complaint—any damage resulting from that alleged negligence was time-barred under MCL 600.5805(10). In other words, plaintiffs cannot recover damages for erosion that occurred *before* October 28, 2010. However, to the extent that plaintiffs allege defendant continued to maintain the berm in a negligent manner after October 28, 2010, which resulted in further erosion, those claims are not time-barred under MCL 600.5805(10).[2] See *Terlecki*, 278 Mich App at 652, quoting MCL 600.5827 (explaining that a claim accrues "'at the time the wrong upon which the claim is based was done regardless of the time when damage results.'") Therefore, the trial court erred in part when it held that plaintiffs' nuisance and negligence claims were time-barred in their entirety.

## III. DENIAL OF MOTION TO ENTER SETTLEMENT ORDER

Finally, plaintiffs argue that the trial court erred in refusing to enter a settlement agreement that the parties allegedly agreed to and plaintiffs argue that this Court should enter a default judgment in their favor.

Plaintiffs' argument concerns the mediation that the parties participated in at some point before the court held a hearing to address defendant's motion for summary disposition. Attorneys for defendant and plaintiffs attended the mediation. A mediation schedule indicated that "Board of Directors representatives and President, Chuck Beatty," attended the mediation as representatives of defendant association. However, the schedule also indicated, "[w]ill likely need full Board vote." Following mediation, the parties appear to have reached a "settlement proposal." The proposal set forth substantive terms, but indicated that "[t]his proposal will be submitted to the Glenn Haven Shores Association Board promptly for approval and will not be effective until approved by the Board and by Plaintiffs Reed."

---

[2] Necessarily, the burden is on plaintiffs to present evidence to create an issue of fact as to whether they can identify the level of erosion that occurred after October 28, 2010.

After the Board apparently voted to reject the proposed settlement agreement, plaintiffs moved the trial court to enter the proposed settlement as a final order.[3] The trial court denied plaintiffs' motion, stating:

> the Court cannot enforce the settlement order or the settlement agreement because of the Court did not, at the time of the pre-trial or in the pre-trial statement, compel parties to be present, even though the mediator indicated in his letter that he wanted parties to be present, the parties were not present. There is nothing signed; there is nothing binding that the Court can see that would allow the Court to enforce the settlement agreement.

> * * *

> the proposed settlement agreement is not binding on the parties. I don't believe it's appropriate for the Court to force a settlement on the parties at this time.

On appeal, plaintiffs argue that defendant was required to send representatives with authority to settle the case and requests that this Court enter a default against defendant pursuant to MCR 2.401(G) which provides in relevant part as follows:

> (1) Failure of a party or the party's attorney or other representative to attend a scheduled conference or to have information and authority adequate for responsible and effective participation in the conference for all purposes, including settlement, as directed by the court, may constitute a default to which MCR 2.603 is applicable or a ground for dismissal under MCR 2.504(B).

Initially we note that MCR 2.401 applies to pre-trial procedures in the trial court; to the extent that plaintiffs argue the trial court should have entered a default judgment under MCR 2.401(G), that argument lacks merit.

"A trial court's authority to enter a default or a default judgment against a party must fall within the parameters of the authority conferred under the court rules." *Henry v Prusak*, 229 Mich App 162, 168; 582 NW2d 193 (1998). Before entering a default, "the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper." *Vicencio v Ramirez*, 211 Mich App 501, 506; 536 NW2d 280 (1995). Some of the factors that a trial court should consider before dismissing a case include:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect;

---

[3] The motion is not located in the lower court file; however, the court referenced the motion at a motion hearing.

and (7) whether a lesser sanction would better serve the interests of justice. [*Id*. at 507.]

Here, defendant did not violate a court order by sending representatives to the mediation. Moreover, it appears that the Reed plaintiffs did not attend the mediation because the proposed settlement indicated that it was subject to approval of both the Board and the Reed plaintiffs. Thus, plaintiffs' argument that defendant did not send to mediation all parties necessary to reach a settlement agreement is not persuasive where the settlement was also subject to approval by some of the plaintiffs. Moreover, both the mediation schedule and the proposed settlement indicated in plain terms that a final settlement agreement would require a vote of the Board. Plaintiffs were therefore aware of the terms of the mediation and there is no indication that plaintiffs raised an objection at the outset of the mediation. Plaintiffs fail to cite any other conduct on the part of defendant that would warrant the trial court's entry of a default judgment. The record supports that defendant engaged in good-faith settlement negotiations that would be subject to final Board approval. Merely because the Board rejected the proposed settlement does not amount to conduct that warranted entry of a default judgment and plaintiffs' arguments to the contrary are devoid of merit. The trial court did not err in denying plaintiffs motion to enter the proposed settlement and there were no grounds for a default judgment.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Neither party having prevailed in full, neither may tax costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Stephen L. Borrello